United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 24, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

**No. 02-20972**
_____

**UNITED STATES OF AMERICA**

**Plaintiff-Appellee**

**v.**

**TONY RAY WASHINGTON**

**Defendant-Appellant.**

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER and CLEMENT, Circuit Judges, and LITTLE*, District Judge.

LITTLE, District Judge:

Tony Washington was convicted at a bench trial on stipulated facts of being a felon in possession of a firearm. Washington claims the district court erred with respect to the following issues: (1) holding that exigent circumstances justified the police officers' no-knock entry; (2) denying a sentence reduction for acceptance of responsibility; (3) enhancing Washington's sentence for possessing a firearm in

---

* District Judge of the Western District of Louisiana, sitting by designation.

connection with a felony offense; (4) and concluding that the evidence sufficiently proved that the weapons traveled in or affected interstate commerce as necessary for a conviction. For the following reasons, we AFFIRM in part and REVERSE and REMAND in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On 7 November 2001, the government charged appellant Tony Ray Washington with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). Washington proceeded to a bench trial on stipulated evidence after losing his motion to dismiss and motion to suppress the evidence. The district judge found him guilty of the one count indictment. On 22 August 2003, the district court sentenced Washington to sixty-three months in prison, three years supervised release, a fine of $1000 and a special assessment of $100. Washington timely appealed.

On 20 March 2001, Officer Goines of the Houston Police Department and an informant conducted an undercover drug purchase at 2420 ½ Pierce in Houston, Texas. The informant told Goines that Darnell Johnson sold codeine from a room at a halfway house located at that address. The officers were told that the rooms measured approximately twenty feet by twenty feet with windows but no kitchen or bathroom. Washington contends that the rooms lack bathrooms, sinks or any other kind of plumbing. In addition, Washington states that all the windows in the room at issue face the front of the building.

The informant purchased codeine from room number 9 at the halfway house. The codeine was in liquid form packed in a baby food jar. The informant told Goines that he

2

observed multiple drugs and at least one firearm in the room. The informant also noted that Johnson always carried a firearm on his person. Based on this information, on 21 March 2001, Goines, along with four other Houston Police officers, executed a search warrant for the room and an arrest warrant for Johnson. At approximately 3:00 p.m., the officers forced open the main door to the building. After climbing the stairs, Goines yelled "Houston Police" and opened the door to the room with a battering ram. The officers did not knock on the door prior to using the battering ram. Upon entry into the room, the officers found Washington lying in bed with two firearms within his reach. The police arrested Washington without incident. A subsequent search of the room revealed five firearms and a substance later determined to be cocaine. Upon arrest, Washington admitted he owned the firearms. All the firearms were manufactured outside of Texas and one was reported stolen. During the search, the officers did not recover any codeine or apprehend Johnson.

Washington was subsequently charged with being a felon in possession of a firearm.[1] Washington moved to dismiss the indictment arguing that a conviction constitutionally required more proof than merely showing that at some point the firearm traveled across state lines. Washington also moved to suppress the evidence arguing that the "no-knock" entry violated the Fourth Amendment. Washington was unsuccessful in both motions. Washington waived his right to a jury and proceeded to a bench trial based on written stipulation. On 13 May 2002, the district court convicted Washington for knowingly and unlawfully possessing a firearm after having been

---

[1] Washington's prior conviction was for unauthorized use of a motor vehicle.

convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The United States Probation Office ("Probation Office") prepared a pre-sentence report ("PSR") which applied the United States Sentencing Guidelines ("USSG" or "Guidelines"). The amended PSR showed a base offense level of fourteen.[2] The Probation Office raised the base two levels because of the number of firearms [USSG § 2K2.1(b)(1)(A)] and raised it two more levels because one of the firearms was reported stolen [USSG § 2K2.1(b)(4)]. Four more levels were added as the weapons were used in connection with possession of a controlled substance [USSG § 2K2.1(b)(5)]. Finally, the Probation Office suggested a three level reduction for acceptance of responsibility. The PSR calculated Washington's total offense level as nineteen and his criminal history category as IV. The PSR reflected a guideline range of imprisonment of forty-six to fifty-seven months.

The government objected to the PSR arguing that Washington deserved only a two point reduction for acceptance of responsibility since he did not notify his intention to plead guilty in a timely manner. Conversely, Washington claimed that he was entitled to a three point reduction for acceptance of responsibility. In addition, Washington objected to the four point increase under § 2K2.1(b)(5). The district court denied sua sponte any credit for acceptance of responsibility. The court determined the offense level to be twenty-two with a criminal history category of IV. The court calculated Washington's sentencing range as between sixty-three to seventy-

---

[2] Originally, pursuant to USSG § 2k2.1(a)(4)(A), the PSR stated a base level of twenty due to Washington's prior conviction. The Probation Office later reduced this level to fourteen being guided by United States v. Charles, 301 F.3d 309 (5th Cir.2001), which held that unauthorized use of a motor vehicle was not a crime of violence.

4

eight months. The court sentenced Washington to a term of sixty-three months. Washington subsequently filed the appeal presently before this court.

## II. DISCUSSION

This appeal involves the following four issues: (1) whether the district court erred in concluding that exigent circumstances justified the police officers' no-knock entry and thereby denying Washington's motion to suppress; (2) whether the district court erred by denying a sentencing reduction for acceptance of responsibility; (3) whether the district court erred by enhancing Washington's offense level pursuant to § 2K2.1(b)(5) for possessing a firearm in connection with another felony offense; and (4) whether the evidence that the recovered firearms were manufactured in another state sufficiently proved that the weapons traveled in or affected interstate commerce as necessary for Washington's conviction. We discuss each issue in turn.

### A. Motion to Suppress

#### 1. Standard of Review

This court reviews findings of fact on a motion to suppress under a clearly erroneous standard and reviews the district court's conclusions of law de novo. See United States v. Singh, 261 F.3d 530, 535 (5th Cir.2001). The presence of exigent circumstances is a finding of fact reviewed for clear error. United States v. Jones, 239 F.3d 716, 719 (5th Cir.2001). Additionally, this court views the facts in the light most favorable to the prevailing party. United States v. Howard, 106 F.3d 70, 73 (5th Cir.1997)(citations omitted).

5

2.    Analysis

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," U.S. Const. amend. IV.  The Supreme Court has stated that the "Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry."  Richards v. Wisconsin, 520 U.S. 385, 387, 117 S.Ct. 1416, 1417, 137 L.Ed.2d 615 (1997) (citing Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)).[3]  This requirement is tempered by "countervailing law enforcement interests." Id. The Court recognized that the "knock-and-announce requirement could give way 'under circumstances presenting a threat of physical violence,' or 'where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.'" Id. at 391, 117 S.Ct. at 1420 (quoting Wilson, 514 U.S. at 936, 115 S.Ct. at 1919).

The Supreme Court established the following standard for evaluating a no-knock entry: "the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards, 520 U.S. at 394, 117 S.Ct. at 1421.  The Court rejected the contention that all drug investigations inherently have risks of officer safety or destruction of evidence. Id. at 393, 117 S.Ct. at 1421.  Although the Court refused to

---

[3] Neither party in the instant case argues that 18 U.S.C. § 3109, the "knock and announce" statute, applies to the state officers who executed the warrant.

adopt a blanket rule that police are never required to knock-and-announce when executing a warrant for a drug investigation, the Court admitted that the showing of reasonableness "is not high." Id. at 394, 117 S.Ct. at 1422.  In order to justify the no-knock entry in this case, the police officers must have had a reasonable suspicion that the drugs could be readily destroyed or that announcing their presence would endanger their safety.

Washington contends that the physical aspects of the drugs and halfway house eliminate any risk that the drugs could be easily destroyed.  The police had information that the drugs were in liquid form stored in small containers.  The room only had windows facing the street and lacked plumbing.  The  government contends that the liquid form of the suspected drugs allowed for the possibility of destruction even without sinks or toilets in the room.

Turning to the safety concerns, Washington contends that the information given to the police did not create exigent circumstances.  Washington argues that information about weapons present in the room and that the suspect was armed is not sufficient to create a reasonable suspicion of danger.  He contends that to meet this burden either the suspect needs to be aware of the police surveillance or that the police have information that the suspect is both armed and dangerous.  Washington cites a litany of cases from other circuits and essentially one Fifth Circuit case to support his position.

In United States v. Munoz-Guerra, 788 F.2d 295 (5th Cir.1986), this circuit reversed a lower court's denial of a motion to suppress.  We stated that "[o]ur past opinions have consistently emphasized that without reason to believe that a criminal suspect was

7

aware of police surveillance, the mere presence of firearms or destructible, incriminating evidence does not create exigent circumstances." 788 F.2d at 298. Munoz-Guerra, and the cases cited therein, considered whether exigent circumstances existed for the officers to execute a warrantless search. Here the officers possessed valid search and arrest warrants. The pertinent issue is whether the officers' suspicions were reasonable to justify their entry without announcing their presence.

The police had information that there were weapons in the room and that the suspect was armed. In United States v. Rodea, this circuit held that an officer's safety concerns were reasonable even though he had no particularized knowledge that the suspect was armed. 102 F.3d 1401, 1408 (5th Cir.1996). The court considered the officer's testimony that he believed it was not uncommon for drug dealers to carry weapons as sufficient to enter without warning. Id. Similarly, in United States v. Howard, we held that an officer's safety concerns were reasonable even without specific knowledge that the suspect was armed or dangerous given that "firearms are tools of the trade of those engaged in illegal drug activities." 106 F.3d 70, 75 (5th Cir.1997)(citations omitted).

Whether the officers had a reasonable suspicion that the drugs could be readily destroyed is a close issue. True, the physical conditions of the room and the physical nature of the drugs challenge the notion that a suspect could quickly and effectively destroy the drugs with police officers beckoning at the door. We, however, need not decide the destruction of evidence issue based on the other information available to the officers. The officers believed that the suspect was selling drugs and was typically

8

armed. This information exceeds the level this circuit has found sufficient to establish a reasonable suspicion of danger. Accordingly, we affirm the district court's finding of exigent circumstances and the denial of the motion to suppress.

B.      Sentencing Reduction for Acceptance of Responsibility

1.      Standard of Review

This court reviews a district court's refusal to reduce a defendant's offense level for acceptance of responsibility under USSG § 3E1.1 with a standard "even more deferential than a purely clearly erroneous standard." U.S. v. Maldonado, 42 F.3d 906, 913 (5th Cir.1995) (citations omitted). "The ruling 'should not be disturbed unless it is without foundation.'" Id. (quoting United States v. Robertson, 872 F.2d 597, 610 (5th Cir.1989)).

2.      Analysis

Section 3E1.1 of the Guidelines provides for reduction of the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Comment 2 to USSG §3E1.1(a) ("Comment 2") states that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." The record shows that Washington signed a confession after his arrest and admitted to possessing the firearms. Further, he stipulated to all the evidence necessary for the conviction prior to the bench trial. The Guidelines allow for "rare situations" where the defendant accepts responsibility even though he precedes to trial. Comment 2 explains that "[t]his may occur, for example, where a defendant

9

goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."

The district court held that Washington did not accept responsibility since he "went to trial on a motion to suppress the evidence that the government proposed to use against him and the evidence that was critical to the offense itself, that is, the possession of the firearms that he was convicted." Continuing, the court stated:

> In this instance the defendant has not challenged the applicability of the felon in possession of firearms statute to him. He was not challenging the constitutionality of that statute. He was trying to avoid criminal liability for his conduct by putting the government to proof, which he hoped the government would not be able to establish based upon his contention that the government's proof was unconstitutionally obtained from him. This is not an acceptance of responsibility. This is an intent to walk, not accept responsibility for the criminal conduct, but exactly the opposite, that is, to avoid responsibility for the criminal conduct. It is not the kind of situation where he admits to the conduct but says the statute does not make it criminal or it is not the kind of case where he admits the conduct but he says the statute itself is unconstitutional, these kinds of examples that provide rare exceptions.

The district court equates Washington's attempt to suppress evidence and continue to trial with avoiding responsibility. The problem, however, is that a motion to suppress is not synonymous with putting "the government to its burden of proof at trial." At issue in a suppression hearing is the admissibility of the evidence. The defendant has the burden to demonstrate why the evidence should be excluded. A trial, on the other hand, puts the burden on the government to prove the essential elements of the offense.

The district court creates what is tantamount to a per se prohibition against acceptance of responsibility for a defendant filing a motion to suppress and continuing

10

to trial.  Although Washington surely hoped to avoid conviction when he moved to suppress the evidence, this "intent to walk" does not negate a willingness to accept responsibility under the Guidelines.  Comment 2 recognizes that the defendant can precede to trial on issues not relating to factual guilt and still receive credit for acceptance of responsibility.  The provided example is a constitutional challenge to the statute used for the conviction.  In this situation, even though the defendant desires to avoid criminal punishment, the Guidelines allow acceptance of responsibility.  The defendant's "intent to walk" is not the proper test for his willingness to accept responsibility.  The Guidelines create a distinction between a defendant's denial of factual guilt and denial of legal guilt, allowing acceptance of responsibility for the latter. To permit a reduction when a defendant challenges the constitutionality of a statute but deny it when a defendant admits his conduct and only challenges the way the police obtained the evidence is counter-intuitive.  Washington admitted to the factual conduct that formed the basis of his conviction.  He argued that the police violated the Fourth Amendment when obtaining the evidence.  He did not challenge  the existence or credibility of the evidence itself.

The district court also takes issue with the fact that Washington desired to appeal the ruling denying his motion to suppress.  The court's concern is evident by the following dialogue from the sentencing hearing:

> THE COURT: Are you telling me now that the basis for your appeal is only that [constitutional challenge to possession of a firearm that affects interstate commerce statute] and not the motion to suppress and that you're no longer resisting the constitutionality of the search and seizure that produced the evidence that was critical to the Government's case?

11

MS. WILSON [Washington's attorney]: I'm not saying that. I'm only saying that even if we had not gone forward on a motion to suppress, we would have preserved the issue of both the constitutionality and the argument that the evidence in this case is insufficient even under the statute because of the government's evidence. We would have preserved that issue in any event by requesting conditional plea, which was denied by the government, and thereafter going forward with the stipulated bench trial. So, the fact that we filed a motion to suppress is not dispositive in that sense. We would have done the same thing anyway.

THE COURT: But the trial that was conducted was on the hearing to suppress the evidence and the government was required to call witnesses. And what you're telling me is that you - - that the defendant continues here at sentencing still to contend that the evidence should have been suppressed?

MS. WILSON: Right. And that the search was - -

THE COURT: And, in effect, you do not wish to waive your right to appeal that?

MS. WILSON: That's right.

THE COURT: All right. And the constitutional claim was simply with respect to constitutionality of the felon in possession of firearms, which of course has been upheld many, many times; is that correct?

MS. WILSON: That's right.

THE COURT: All right. Well, my ruling stands, then for the reasons that essentially have been stated.

This colloquy suggests that the court, at least in part, considered Washington's desire to appeal the suppression issue as evidence that he did not accept responsibility. By asking whether Washington would waive the right to appeal the suppression issue, the court intimated that such a waiver might influence the court's decision to deny the sentence reduction. Conditioning a sentence reduction on a waiver of the right to appeal a constitutional issue is problematic. A challenge to the legality of the police

12

conduct is completely separate from a challenge to the factual elements of a defendant's conduct. Washington should not have to waive appeal of a constitutional issue in order to receive a sentence reduction for acceptance of responsibility.

The government contends United States v. Maldonado, 42 F.3d 906 (5th Cir.1995), forecloses this issue. In Maldonado, police officers stopped a suspect for speeding. When Maldonado emerged from his truck, the officer noticed a bulge in his pocket. The officer suspected Maldonado was armed and asked permission to pat him down. After conducting a full pat-down, the officer discovered a bulge in the suspect's boot. Suspecting Maldonado had a weapon, the officer reached into the boot and removed a small package containing what was later found to be heroin. Maldonado was charged with possession of heroin with intent to distribute. Maldonado unsuccessfully moved to suppress the evidence due to an illegal search and seizure. The district court judge refused to allow the defendant to enter a guilty plea on the condition that he could preserve his suppression claim. Maldonado, 987 F.2d at 913. Maldonado waived his right to a jury trial and was found guilty. The district court denied any sentence reduction for acceptance of responsibility.

On appeal, Maldonado argued that he accepted responsibility despite proceeding to trial. Maldonado contended that other than his challenge to the seizure of the evidence, he "stipulated to everything that could be stipulated" and waived his right to a jury trial. Maldonado, 42 F.3d at 913. Arguing that his motion to suppress was not related to factual guilt, Maldonado asserted that his case fell within the "rare situation" of Comment 2 where the defendant may qualify for acceptance of responsibility even

13

after going to trial. Id. The district court determined that evidence of drugs found on Maldonado's person "was both necessary and sufficient" to support his conviction and that "a challenge to the admissibility of the evidence is indistinguishable from a challenge to factual guilt." Id. at 913-14. This circuit affirmed the district court's decision.

Maldonado is distinguishable from the instant case for two reasons. First, as previously described, the district court at least partly conditioned acceptance of responsibility on waiving appeal of the suppression issue. Second, Maldonado challenged his factual guilt by arguing in the suppression hearing that he was not speeding. Maldonado, 42 F.3d at 910. Here Washington stipulated to all of the facts necessary for his conviction. He admitted to the factual guilt of his offense. Washington's decision to pursue the suppression of the evidence should not preclude him from receiving credit for accepting responsibility. To affirm the district court in this case would chill the filing of suppression motions by defendants who admit their factual guilt. Suppression hearings play a vital role in not only protecting the rights of the particular defendant, but also in protecting society from overzealous law enforcement ignoring proper procedure. In the absence of a conditional plea, the defendant would have to choose between trying to suppress the evidence and receiving credit for acceptance of responsibility. A defendant should not have to make this choice. We therefore reverse the district court and remand for re-sentencing on the issue of acceptance of responsibility.

C.     Possession of a Firearm in Connection with Another Felony

14

1.     Standard of Review

This court reviews a district court's application and interpretation of the sentencing Guidelines de novo and reviews the factual findings for clear error.  United States v. Fitch, 137 F.3d 277, 281 (5th Cir.1998)(citing United States v. Edwards, 65 F.3d 430, 432 (5th Cir.1995)).

2.     Analysis

Section 2K2.1(b)(5) of the Guidelines mandates a sentence enhancement if, among other things, the "defendant used or possessed [the] firearm . . . in connection with another felony offense."  Here Washington challenges the district court's determination that he possessed the firearm in connection with a felony offense meriting a four level increase in his offense level.  Washington argues that the evidence is insufficient to show that the weapons were used for any purpose connected to the small amount of drugs recovered.  He contends that while a firearm can conceivably be used in connection with the distribution of drugs, a firearm cannot logically be used "in connection with" possession of drugs for personal use.

We examined this very issue in United States v. Condren, 18 F.3d 1190 (5th Cir.1994).  In Condren, the court enhanced the defendant's sentence for being a felon in possession of a firearm under § 2K2.1(b)(5) because illegal drugs, in addition to the firearm, were found during the search of his home.  The district court concluded that the defendant "possessed the firearm while in possession of small quantities of crack and marijuana seed, and determined that this possession was a felony, because he had been convicted previously of a narcotics offense."  Condren, 18 F.3d at 1194.  This circuit held

15

that the district court correctly determined that a defendant possessing the firearm "in connection with" either drug possession or distribution triggered the sentence enhancement. Condren, 18 F.3d at 1195. "[I]n imposing the enhancement, the district court implicitly concluded that the firearm possession was in connection with the drug possession." Id. Condren argued that "the government failed to show that his firearm possession was 'in connection with,' i.e., in any way related to, his commission of 'another felony.'" Id. at 1194. The defendant contended that "'in connection with' requires the government to establish a 'nexus' between his firearm and drug possession, and that it is lacking because the drug quantity – .1 gram of cocaine and 33.3 grams of marijuana seed – is consistent with personal use and too small to support a conclusion that he possessed the firearm in order 'to protect' the drugs." Id. at 1195. We rejected that argument stating that "[u]nder the ordinary and natural meaning of 'in connection with' as found in § 2K2.1(b)(5) . . . we cannot credit either Condren's contention that the quantity of drugs involved was too small, or the possible contention that the source of the firearm was too unrelated to support the enhancement." Id. at 1198. Further, we noted that "§ 2K2.1(b)(5) does not specify that a certain amount of drugs are required to support the enhancement." Id. at 1199.

Here Washington makes the same argument that this circuit considered in Condren. Washington argues that the quantity of drugs seized was too minute for anything other than personal use and that the government failed to establish a connection between the firearms and the drugs. Washington contends that Condren was wrongly decided and should not control. He directs the court to other circuits that

held that the phrase "in connection with" should be interpreted as equivalent to the phrase "in relation to" as featured in 18 U.S.C. § 924(c). We expressly rejected this same argument in Condren. After distinguishing the two statutes, we stated that the language of "§ 2K2.1(b)(5) mandates an enhancement even if the defendant only possesses a firearm in connection with any other felony." Id. at 1196. Accordingly, we hold that the district court correctly applied the four level increase in Washington's case.

D.      Sufficient Evidence to Support Washington's Conviction

    1.      Standard of Review

"[T]he standard of review for sufficiency of evidence is whether any reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt." United States v. Jones, 133 F.3d 358, 362 (5th Cir.1998)(citing United States v. Alix, 86 F.3d 429, 435 (5th Cir.1992)). "In evaluating the sufficiency of the evidence, [the court] consider[s] the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in support of the verdict." Id. (citations omitted).

    2.      Analysis

For a violation of 18 U.S.C. § 922(g), the government must prove that: (1) the defendant previously had been convicted of a felony; (2) that the defendant possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. See United States v. Gresham, 118 F.3d 258, 265 (5th Cir.1997)(citations omitted).

Here Washington challenges the third prong. Washington concedes that the firearms at issue were manufactured outside of Texas and, therefore, traveled interstate

17

prior to him possessing them in Texas. He argues, however, that proof that the firearm previously crossed state lines is insufficient to meet the interstate commerce element of § 922(g)(1). In support of his position, Washington cites two Supreme Court cases: United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d. 658 (2000), and United States v. Jones, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000).

In United States v. Daugherty, this circuit upheld a conviction of a felon in possession of a firearm after the government proved that the firearm at issue was manufactured in Egypt and imported through Tennessee before reaching Texas. 264 F.3d 513, 514 (5th Cir.2001), cert denied, 534 U.S. 1150 (2002). The defendant argued that "the government failed to prove that he possessed a firearm 'in and affecting' interstate commerce"– essentially the same argument that Washington makes here. Id. at 518. The Daugherty court stated that "we repeatedly have said that evidence similar to that presented in Daugherty's case suffices to maintain a § 922(g)(1) conviction." Id. (citing United States v. Kuban, 94 F.3d 971 (5th Cir.1996)(affirming a § 922(g)(1) conviction where the weapon was manufactured in Belgium and possessed in Texas); United States v. Rawls, 85 F.3d 240 (5th Cir.1996) (affirming a § 922(g)(1) conviction where the weapon was manufactured in Massachusetts and possessed in Texas)). "Thus, his constitutional challenge to § 922(g) fails, because 'the constitutionality of § 922(g) is not open to question.'" Id. (quoting United States v. DeLeon, 170 F.3d 494, 499 (5th Cir.1999).

Daugherty asked the court to reconsider the interstate commerce prong of § 922(g)(1) under two Supreme Court cases, Morrison and Jones – the same two cases

18

Washington asks this court to consider. In <u>Daugherty</u>, we stated "[b]oth [<u>Morrison</u> and <u>Jones</u>], however, are distinguishable from the present case, because a plain jurisdictional element exists in § 922(g), and there is stipulated evidence showing that the gun traveled in interstate commerce. Neither <u>Jones</u> nor <u>Morrison</u> affects or undermines the constitutionality of § 922(g)." 264 F.3d at 518.

This court has already considered and denied Washington's attacks of the interstate commerce prong of § 922(g) in the <u>Daugherty</u> opinion. We agree that the evidence the government presented was sufficient to support Washington's conviction.

### III. CONCLUSION

Based on the foregoing analysis, we AFFIRM in part and REVERSE and REMAND in part. We AFFIRM the district court's denial of Washington's motion to suppress. We AFFIRM the district court's enhancement of Washington's sentence for possessing a firearm in connection with another felony. We AFFIRM the district court's conclusion that the weapons traveled in or affected interstate commerce as necessary for his conviction. We REVERSE the district court's decision to deny Washington a reduction in sentence for acceptance of responsibility and REMAND to the district court for re-sentencing.