LOKEN, Chief Judge,
dissenting.
I respectfully dissent. My disagreement lies not with the court’s articulation of Fourth Amendment principles in Part III of its opinion. Rather, I conclude on this record that the police officers sued for illegal entry, Sergeant Greenwell and Offi *1055 cer Grant, acted reasonably in concluding that exigent circumstances warranted their conduct in effecting the no-knock entry.
During the instructions conference at the close of the evidence, the district court “ruled as a matter of law that there were not exigent circumstances which permitted the waiver of the knock or wait rule, and we’ll not be submitting that to the jury.” As a result, the jury instructions on the Fourth Amendment claims against Sergeant Greenwell and Officer Grant virtually directed a verdict in favor of Doran on those claims. Procedurally, this exigent circumstances ruling was flawed.
The district court explained its ruling in a post-verdict opinion denying defendants’ post-trial motions. The court cited the following facts as supporting its conclusion that exigent circumstances did not justify the no-knock entry: the warrant affidavit was based upon an anonymous tip that did not come from a reliable confidential informant; the tip that drug sales were occurring at the Doran house was not corroborated by a controlled buy or surveillance; the trash search uncovered drug residue, but no evidence linked the trash to Doran’s house; the police did not check the criminal history of Doran and his wife, which would have revealed no prior arrests; and the allegation that Doran’s son was recently arrested for possession of a sawed-off shotgun was not verified. These facts concern what the narcotics investigators knew or should have known when the search warrant issued.
Kansas City narcotics detective Wesley Williamson _nhta.iripd the warrant to search not testify at trial. The warrant and warrant affidavit were not offered into evidence and are not part of the record on appeal. The parties agree that the warrant affidavit was based on an anonymous tip and that the warrant did not authorize a no-knock entry. But the trial record is silent regarding the investigation that preceded issuance of the warrant. Thus, the above-summarized “facts” on which the district court relied were not established at trial. Indeed, at least one fact assertion is contrary to the discovery record, because Detective Williamson testified in a pretrial deposition that the trash search uncovered mail addressed to the Dorans at that address. While I agree that the ultimate issue of Fourth Amendment reasonableness is an issue of law, I conclude the court erred in failing to specify the record on which its ruling was based and in relying on inferences drawn from pretrial proceedings rather than on the facts proved at trial.4
In addition, the district court’s analysis of the exigent circumstances issue was contrary to the Supreme Court’s knock- and-announce decisions in two important respects. First, the district court emphasized that the police did not obtain a no-knock warrant to search the Doran home. In Richards v. Wisconsin, the Supreme Court held that a case-by-case analysis of the facts of a particular entry is required to determine if the police had “a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile. or that it would inhihit the effectual *1056 allowing the destruction of evidence.” 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). The Court noted that a no-knock warrant is reasonable if the issuing magistrate is presented with a sufficient showing of exigent circumstances. But it went on to hold that the no-knock entry in Richards was reasonable even though the issuing magistrate had denied a request for a no-knock warrant. Richards, 520 U.S. at 395-96 & n. 7, 117 S.Ct. 1416; accord United States v. Banks, - U.S. -, -, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003) (“[E]ven when executing a warrant [that does not authorize a no-knock entry], if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in.”). Thus, absent no-knock authority in the warrant, the question is whether the police had reasonable suspicion of exigent circumstances at the time they executed the warrant.
Second, the district court erred in emphasizing that the facts known to the police as they approached the Doran house were the same facts known when they applied for the warrant. To be sure, exigent circumstance cases often turn on facts that unfold as the police approach the premises to be searched, or after they initially knock. See, e.g., Richards, 520 U.S. at 388-89, 117 S.Ct. 1416. But the Fourth Amendment analysis turns on the totality of the circumstances, including facts gathered by the police before they applied for the warrant. The district court’s approach might well result in the police requesting no-knock authority whenever the facts recited in the warrant application might justify a no-knock entry. This would encourage excessive use of the no-knock tactic and is contrary to countless Supreme Court decisions applying the Fourth Amendment’s reasonableness standard.
The court properly avoids the district court’s errors of law in Part III of its opinion. But to compensate, the court errs by shifting the analysis from the conduct of the defendants, Sergeant Green-well and Officer Grant, to the conduct of “the police.” See ante at 1052-54. Section 1983 liability is personal. It is based upon the conduct of a specific defendant acting under color of state law. Just as the sheriff sued for executing an arrest warrant on an innocent man was held not liable in Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), because he was not “required by the Constitution to investigate independently every claim of innocence,” so too a police officer sued for executing a search warrant improperly is not liable under § 1983 for inadequacies in the investigation that led to the warrant being issued, so long as the facts known to the defendant at the time he executed the warrant rendered his conduct constitutionally reasonable. Thus, in my view, this case should turn on whether the evidence established that Sergeant Greenwell and Officer Grant acted reasonably in using the no-knock method of executing the warrant to search Doran’s house.
The task of executing the warrant was assigned to the Police Department’s Street Narcotics Unit, a specialized unit whose primary function was to execute search warrants, usually on drug houses. Sergeant Greenwell was in charge of the Unit’s entry team. Before executing the warrant, Sergeant Greenwell talked with Detective Williamson, the investigating officer, and reviewed the warrant and warrant affidavit. From this, he learned that methamphetamine was being manufactured at the house to be searched; that Doran was selling crack cocaine and methamphetamine at the front door throughout the day; that drugs were stored in dresser drawers throughout the house; that guns *1057 were kept in the bedroom; that Doran’s 26-year-old son Joseph lived in the house and had recently been arrested for possessing a sawed-off, shotgun; and that trash collected near the Doran home had tested positive for controlled substances. Sergeant Greenwell also did a drive-by to verify the location of the house and to “determine any tactical concerns.” Based upon this information and his experience with methamphetamine labs, Sergeant Greenwell concluded that this would be a high-risk entry and instructed his team to make a dynamic entry. He selected Officer Grant to serve as ram officer for the entry. Because of the hazards associated with methamphetamine labs, Greenwell arranged for a fire department pumper and an ambulance to wait at the entry team’s assembly point. Members of the team other than Officer Grant wore respirators to reduce the risk from chemical fumes. After a briefing by Sergeant Greenwell, the entry team proceeded to Doran’s house and executed the warrant.
On this record I conclude that Sergeant Greenwell acted reasonably in deciding to execute the search warrant by means of a no-knock entry. From his investigation, Greenwell learned that the Doran house was suspected of harboring a clandestine methamphetamine lab. That fact has justified no-knock entries in numerous cases.[5] Consistent with these cases, Sergeant Greenwell testified at trial:
Q. What kind of dangers do you encounter in terms of officer safety when you enter ... what you presume to be a meth lab?
A. Well, besides the obvious danger of drugs and firearms ... you have a lot of added problems that go along with a clandestine lab .... The chemicals and the types of products that individuals use' to manufacture methamphetamine are very volatile, combustible, ha[ve] caused explosion, fire, things of that nature. We carry specific types of equipment to help make our entry safer for us ... and we train the [officers] to evacuate if those detectors go off that tell us whether the environment is superseding our personal protective equipment.
Q.... [H]ave you ever been in a lab . where somebody tried to destroy it?
A. Yes. We’ve been in a situation before where suspects could flee and knock over parts of the lab.... Sometimes they destroy the lab in an attempt to cause harm to us on the entry team and sometimes trying to destroy evidence. ...
Q. Okay. Is there any kind of gas danger?
A. Gas, there’s a phosphine gas danger ... which is highly deadly.
Greenwell also learned that ongoing drug sales had been reported and corroborated by a trash search, and that numerous weapons were thought to be kept in the house, facts that also have justified no-knock entries in numerous cases.[6] Finally, *1058 he learned that Doran’s son was recently arrested for possession of a sawed-off shotgun. Reasonable suspicion that an armed and potentially dangerous resident will be present has frequently justified no-knock entries.[7] The entry team conducted no surveillance to determine if the son was home or any residents were awake immediately before the nighttime entry. But if facts known prior to obtaining the warrant justify a no-knock entry, and if no contrary facts are discernable to the officers when executing the warrant, then the no-knock entry is constitutionally reasonable.
While the police bear the burden of establishing exigent circumstances, in a felony drug investigation “[t]his showing is not high.” Richards, 520 U.S. at 394, 117 S.Ct. 1416. In this case, the head of a team brought in to execute the warrant learned that the house to be searched was suspected of harboring a clandestine methamphetamine lab, a stash of drugs for ongoing street sales, multiple weapons, and a potentially violent resident. It was constitutionally reasonable for Sergeant Greenwell, the head of this special team, to rely on what he learned from reading the warrant documents and from interviewing the investigating narcotics officer. In explaining its contrary ruling, the district court relied on the fact that Officer Grant “routinely operated the ram as he did in this case.” But Sergeant Greenwell made the decision to make the no-knock entry and assigned Officer Grant the role of ram officer. Greenwell testified that Grant was often given this assignment for high-risk entries. Having been briefed by Sergeant Greenwell, Officer Grant had no constitutional duty to verify that exigent circumstances attended execution of the Doran warrant before carrying out his assignment. In these circumstances, Officer Grant’s testimony did not establish a Fourth Amendment violation.
Although Sergeant Greenwell and Officer Grant acted reasonably, the no-knock entry might nonetheless have been constitutionally unreasonable if the information of suspected activity came from an unreliable source and was insufficiently corroborated by the narcotics investigators. But Doran did not sue the investigating officer, Detective Williamson. Instead, the district court found from “evidence” outside the trial record that the investigation was inadequate and then used that finding to impose substantial Fourth Amendment damage liability on police officers whose own conduct was constitutionally reasonable. This was an improper extension of § 1983 liability.
For the foregoing reasons, I conclude that the Fourth Amendment claims against Sergeant Greenwell and Officer Grant should not have been submitted to the jury. And because these individual defendants did not violate Doran’s constitutional rights, his failure-to-train and custom and practice claims against the Board likewise should not have been submitted. See Roach v. City of Fredericktown, 882 F.2d 294, 298 (8th Cir.1989). Accordingly, I would reverse the judgment of the district court and remand the case with directions to dismiss the complaint.

. See United States v. Tucker, 313 F.3d 1259, 1265-66 (10th Cir.2002); United States v. Keene, 915 F.2d 1164, 1168-69 (8th Cir.1990), cert. denied, 498 U.S. 1102, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991); United States v. Spinelli, 848 F.2d 26, 29-30 (2d Cir.1988); cf. United States v. Walsh, 299 F.3d 729, 733-34 (8th Cir.) (warrantless search authorized by public safety exigency), cert. denied, 537 U.S. 1066, 123 S.Ct. 617, 154 L.Ed.2d 554 (2002).

. See Banks, - U.S. at -, 124 S.Ct. at 527; United States v. Washington, 340 F.3d 222, 227 (5th Cir.), cert. denied, - U.S. -, 124 S.Ct. 942, 157 L.Ed.2d 757 (2003); United States v. Gambrell, 178 F.3d 927, 928-29 (7th Cir.), cert. denied, 528 U.S. 920, 120 S.Ct. 281, 145 L.Ed.2d 236 (1999); United States v. Mattison, 153 F.3d 406, 410-11 (7th Cir.1998); United States v. Singer, 943 F.2d 758, 761-63 (7th Cir. 1991); State v. Baker, 103 S.W.3d 711, 717-19 (Mo.2003) (enbanc).

. See United States v. Ramirez, 523 U.S. 65, 68-72, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998); United States v. Nguyen, 250 F.3d 643, 645 (8th Cir.2001); United States v. Gay, 240 F.3d 1222, 1228-29 (10th Cir.), cert. denied, 533 U.S. 939, 121 S.Ct. 2571, 150 L.Ed.2d 735 (2001); United States v. Weeks, 160 F.3d 1210, 1213-14 (8th Cir.1998); United States v. Murphy, 69 F.3d 237, 243 (8th Cir.1995), cert. denied, 516 U.S. 1153, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996).