United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-50094

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER GAVIN POWELL,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. W-03-CR-143

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Following the denial of his motion to suppress, Christopher Gavin Powell ("Powell") was

convicted after a bench trial on a single count of possession of cocaine with intent to distribute, in

violation of 21 U.S.C. § 841(a)(1). Powell was sentenced to 57 months imprisonment and three years

of supervised release. Powell now appeals from his conviction and sentence, contending that the

cocaine discovered by a Texas State Trooper during a routine traffic stop should have been

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R.
47.5.4.

suppressed because the trooper unreasonably extended the length of the initial purposes of the stop, in violation of his Fourth Amendment rights. Because we conclude that the cocaine discovered from the search was not obtained as a result of an unreasonable detention, Powell's conviction and sentence are AFFIRMED.

## FACTUAL BACKGROUND

Because the general facts of this case are not seriously in dispute, we recite the findings of fact made by the district court to describe the events leading up to Powell's arrest and ultimate conviction:

> The evidence established at the [suppression] hearing was that shortly before 11:30 p.m., on [Saturday,] May 17, 2003, Texas State Trooper Mike Asby (Asby) was on patrol on Interstate 45, near Centerville, in Leon County, Texas. Asby was parked on the median when he observed a Pontiac Transport minivan, later identified as belonging to Powell, traveling northbound on I-45. Asby's radar registered Powell's vehicle traveling at 72 mph, seven (7) mph over the posted nighttime speed limit of 65 mph. Asby then pursued Powell's vehicle and Powell pulled over and stopped on the right hand side of the interstate.

> Asby approached the vehicle from the passenger side, a standard safety practice for Troopers in that area, and noted that the vehicle had a Wisconsin license plate. Moving to the driver's side window, Asby noticed that the window was rolled down only a few inches; Asby asked Powell to roll the window down fully and Powell informed Asby that the window was broken and would not go down any further. Asby testified he became suspicious because in his twenty eight (years) of law enforcement experience, windows often malfunctioned in such a manner when contraband was being transported within the door panel.

> Asby requested Powell's license and insurance information and noticed that Powell's hands were shaking. Asby then asked Powell where he was coming from and where he was going. Powell told Asby that he was coming from a girlfriend's house in Houston and that he was headed to Dallas. At that point Powell surrendered his license, but indicated that his auto insurance had lapsed. Asby informed Powell that he would be running a check on his license for any outstanding warrants and would issue him a warning citation for speeding.

> Asby returned to his patrol car to "call-in" Powell's driver's license information and also requested backup at that time. The Defendant's warrant check came back negative as to any warrants, but indicated that Powell had been arrested

2

for burglary and assault. Asby then remained in his vehicle awaiting the arrival of his backup. Approximately nine minutes elapsed from the time the warrant check came back until Asby's backup arrived. Asby exited his vehicle, conferred with his backup and the [sic] approached Powell's vehicle. At that time Asby asked Powell if he could search his vehicle, to which Powell replied in the affirmative. Asby conducted a search of the vehicle and found a large quantity of cocaine secreted in the driver's side door panel. Appellant [sic] was then placed under arrest.

## APPLICABLE LAW

### A. Standard of Review

In our consideration of a denial of a motion to suppress, we review a district court's findings of fact for clear error and its conclusions of law de novo. United States v. Phillips, 382 F.3d 489, 494 (5th Cir. 2004); United States v. Washington, 340 F.3d 222, 226 (5th Cir. 2003). The reasonableness of an investigatory stop is a question of law which we review de novo. See Goodson v. City of Corpus Christi, 202 F.3d 730, 737 (5th Cir. 2000); United States v. Jordan, 232 F.3d 447, 448 (5th Cir. 2000). Moreover, "all of the evidence introduced at a suppression hearing [is viewed] in the light most favorable to the prevailing party, in this case the Government." United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002).

### B. Fourth Amendment

It is well settled that the Fourth Amendment prohibits unreasonable searches and seizures. United States v. Sharpe, 470 U.S. 675, 682 (1985); see United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004) (en banc); United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003); United States v. Jones, 234 F.3d 234, 239-40 (5th Cir. 2000). Generally, a search or seizure of a defendant without probable cause or a warrant is a violation of the Fourth Amendment. Notwithstanding, the Government is permitted to initiate warrantless searches and seizures in particular circumstances. See, e.g., United States v. Shaw, 701 F.2d 367, 376 (5th Cir. 1983) (stating that "searches

3

conducted outside the judicial process of obtaining a warrant are <u>per</u> <u>se</u> unreasonable, except those conducted in a few narrowly defined situations.  The exceptional situations are those in which 'the societal costs of obtaining a warrant, such as danger to law officers or risk of loss or destruction of evidence, outweigh the interest of recourse to a neutral magistrate.'") (quoting <u>Arkansas v. Sanders</u>, 442 U.S. 753, 759 (1979)).

It has also been determined that the stopping of a motor vehicle and the detention of its occupants, even for a temporary moment, is a seizure for Fourth Amendment purposes.  <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996); <u>Grant</u>, 349 F.3d at 196; <u>United States v. Sanchez-Pena</u>, 336 F.3d 431, 436 (5th Cir. 2003).  Moreover, "[t]his court . . . has treated routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation, as <u>Terry</u> stops." <u>Brigham</u>, 382 F.3d at 506; <u>see</u> <u>also</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984) (directing that "the usual traffic stop is more analogous to a so-called '<u>Terry</u> stop' than to a formal arrest"). Evidence obtained from a search of a defendant in violation of Fourth Amendment limitations cannot be used against that defendant to prove his guilt at trial.  <u>Santiago</u>, 310 F.3d at 340; <u>see also</u> <u>United States v. Ragsdale</u>, 470 F.2d 24, 30 (5th Cir. 1972) (instructing that "[t]he exclusionary rule forbids the use of evidence obtained by an unlawful search, not because the evidence is not probative, or to chastise errant law officers or to benefit the accused, but to compel respect for the guaranty of the Fourth Amendment 'in the only effectively available way–by removing the incentive to disregard it'") (quoting <u>Elkins v. United States</u>, 364 U.S. 206, 217 (1960)).  The Government always bears the burden of justifying a warrantless search.  <u>See</u> <u>Jones</u>, 234 F.3d at 239.

Whether a court will sanction an officer's intrusion on a detained motorist's right to be free from an unreasonable search or seizure is based on the "reasonableness" of the detention.  <u>See</u> <u>Ohio</u>

v. Robinette, 519 U.S.39, 40 (1996) (directing that the "touchstone of Fourth Amendment analysis is reasonableness") (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)). Thus, we have emphasized that detention, not questioning, is the focus of the inquiry regarding the permissiveness of a Terry stop. See United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993). This "requires district courts to consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances." Brigham, 382 F.3d at 507. "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Robinette, 519 U.S. at 39. Thus, a detaining officer "must be able to articulate something more that an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted).

In evaluating the reasonableness of a basic traffic stop, the Supreme Court has continuously directed courts to employ a two-step inquiry in determining whether the stop complied with the Fourth Amendment boundaries pronounced in Terry v. Ohio:[1] (1) whether the stop was justified at its inception; and (2) whether the Fourth Amendment intrusion was reasonably related in scope to the circumstances that justified the interference in the first place. Sharpe, 470 U.S. at 675-76. Moreover, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Florida v. Royer, 460 U.S. 491, 500 (1983); see also United States v. Valadez, 267 F.3d 395, 398 (5th Cir. 2001); United States v. Dortch, 199 F.3d 193, 198 (5th Cir. 1993). However, at the point that the purposes of the

---

[1] 392 U.S. 1, 19-20 (1968).

original detention are no longer supported by the facts that justified the initial stop, the detention must end, unless the officer can point to additional reasonable, articulable facts which would justify a continued detention. Grant, 349 F.3d at 196; Valadez, 267 F.2d at 398; Shabazz, 993 F.2d at 436.

An analysis of reasonableness is necessarily fact-specific; "factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." United States v. Ibarra-Sanchez, 199 F.3d 753, 759 (5th Cir. 1999). Courts are directed to look at the "totality of the circumstances" to discern whether that officer was faced with a "particularized and objective basis" for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002). This permits "officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. (quoting United States v. Cortez, 449, 418 (1981)). At the post-stop phase of an officer's investigation, the question for appellate review becomes whether a reasonable officer, faced with the same facts and circumstances as the detaining officer, could believe that the defendant had committed or was committing a criminal offense. See United States v. Levine, 80 F.3d 129, 132 (5th Cir. 1996) (recognizing that probable cause to arrest is present "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense"). In the instant case, the inquiry is whether Asby was presented with sufficient facts to support a reasonable belief that drug activity was afoot, prior to the time Asby ran the computer check of Powell's license and registration.

B. Valid Consent

"Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." United States v. Rivas, 157 F.3d 364, 368 (5th Cir. 1998) (internal quotation marks and citation omitted). An individual's "[c]onsent to search may, but does not necessarily, dissipate the taint of the [F]ourth [A]mendment violation." United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993). To show valid consent after a Fourth Amendment violation, the Government must establish that (1) "consent was voluntarily given" and (2) the giving of such consent "was an independent act of free will." Id. The first element focuses on coercion, and the second element on the causal connection to the constitutional violation. Id.

To determine whether a defendant's consent was an independent act of free will and, thus, broke the causal link between the consent and the Fourth Amendment violation, the court must consider: " (1) t he temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." Id.

## DISCUSSION

### A.  Reasonable Suspicion For Extended Detention

Powell does not contest the initial stop of his vehicle. Asby had reasonable suspicion to stop Powell for speeding. Powell also concedes that Asby could lawfully request his driver's license, registration, and run a computer check of the same. See Dortch, 199 F.3d at 198. What Powell does contest, however, is Asby's extended detention of him after the computer background check was complete, i.e., after the original purposes of the stop were concluded. Powell contends that Asby exceeded the scope of the initial purposes of the stop by waiting several minutes for backup, after the

7

computer check was complete.  Powell maintains that at the close of the computer background check

Asby should have returned his license and registration and permitted him to go on his way.

As we have previously stated, "a Fourth Amendment violation occurs when the detention

extends beyond the valid reason for the stop.  Once a computer check is completed and the officer

either issues a citation or determines that no citation should be issued, the detention should end and

the driver should be free to leave [in his or her vehicle]."  Santiago, 310 F.3d at 341-42 (internal

citations omitted).  To continue  a detention after this point, an officer must be able to point to

specific articulable facts suggesting that a crime has been or is afoot.  United States v. Grant, 349

F.3d 192, 196 (5th Cir. 2003).

> When making a reasonable-suspicion determination, we have said repeatedly that
> [district courts] must look at the totality of the circumstances of each case to see
> whether the detaining officer has a particularized and objective basis for suspecting
> legal wrongdoing.  This allows officers to draw on their own experience and
> specialized training to make inferences from and deductions about the cumulative
> information available to them that might well elude an untrained person.

Id. at 197 (quotation marks and internal and external citations omitted ).  Notwithstanding, Fourth

Amendment activities are to be judged in the light of objectively justifiable factors, not a law

enforcement officer's subjective motives.  See, e.g., Saucier v. Katz, 533 U.S. 194, 210  (2001)

(recognizing that the "[u]nderlying intent or motive are not relevant to the inquiry [of

reasonableness]; rather, the question is whether the officers' actions are objectively reasonable in light

of the facts and circumstances confronting them") (Ginsburg, J., concurring) (internal quotations

marks and citation omitted);  see also Whren, 517 U.S. at 812-13.  Thus, officers must be able to

articulate something more than just an unparticularized or inchoate hunch.  Sokolow, 490 U.S. at 7.

Although "[t]he showing required to demonstrate 'reasonable suspicion' is considerably less than that

which is necessary to prove probable cause.[,] . . . the Fourth Amendment requires only some minimal level of objective justification for [an] officer's actions, measured in light of the totality of the circumstances." United States v. Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992) (citing Sokolow, 490 U.S. at 6-8).

In the instant case, the Government contends that Asby's continued detention of Powell after the completion of the computer check was permissible because Asby had obtained reasonable suspicion during the course of his investigation of the speeding violation. The Government points to the following facts to support its contention of reasonable suspicion: (1) Powell was stopped at approximately 11:30 at night; (2) Powell had been traveling north on a known drug corridor; (3) Powell's driver's side window would not roll completely down, suggesting the possibility that drugs were hidden in the compartment of the vehicle's door; (4) Powell's hands were shaking; and (5) Asby's discrediting of Powell's story that he was coming from Houston after visiting a 'lady friend' and that he planned to stop off in Dallas before returning to Wisconsin. The Government asserts that when each of these factors are taken together as a whole, and reasonable inferences are drawn from them, they are sufficient to warrant objectively reasonable suspicion of drug trafficking, enough to justify the extended nine minute delay of Powell. Cf. Arvizu, 534 U.S. at 275 (holding that reasonable suspicion cannot be based on isolated instances of behavior). We agree. When the total of these specific facts are taken together, in the light most favorable to the prevailing party as we are required to do on this appeal, we cannot conclude that Asby's continued detention of Powell was unreasonable.

Taking the two Terry factors utilized in evaluating the reasonableness of an officer's stop into consideration, we proceed directly to the second prong of the analysis, i.e., the reasonableness of the extended delay, as the first factor is not in dispute.

Powell contends that Trooper Asby was not lawfully justified in the extended delay of him because the facts that were presented to the officer prior to completion of the computer check would not have led a reasonable officer in Asby's position to believe that he was trafficking in illegal narcotics. As stated, an officer must have reasonable suspicion of a crime to justify a temporary delay beyond the initial purposes of the stop. See Shabazz, 993 F.2d at 436. As the Government points out, however, there are, in this instance, sufficient articulable facts that Asby could fairly have relied on to raise his suspicions to a lawful level of reasonableness, sufficient to justify this extended delay: Powell was traveling on a known major drug corridor;[2] the hour at which he was stopped was also a factor contributing to Asby's suspicions;[3] Powell's hands were shaking, allowing for an inference

---

[2] See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975) (recognizing that officers making the stop "may consider the characteristics of the area in which they encounter a vehicle" when formulating reasonable suspicion; see also U.S. v. Vasquez, 298 F.3d 354 (5th Cir. 2002) (recognizing that the defendant's vehicle was traveling down a known corridor for illegal immigration and drug trafficking in its determination of reasonable suspicion); accord U.S. v. Foreman, 369 F.3d 776 (4th Cir. 2004) (considering a Trooper's prior experiences with drug interdiction on Route 13 as one factor in formulating reasonable suspicion of drug activity); U.S. v. Jones, 44 F.3d 860 (10th Cir. 1995) (considering that the defendant was traveling between two cities known for high drug usage in determining reasonable suspicion for drug activity).

[3] See United States v. Villalobos, 161 F.3d 285, 289 (5th Cir. 1998) (recognizing that the time of day that a vehicle is traveling "is a permissible consideration" in the determination of reasonable suspicion of illegal alien trafficking); United States v. Estrada, 526 F.2d 357, 358 (5th Cir. 1976) (considering the lateness of the hour and the road on which the defendants were traveling in determining reasonable suspicion for transportation of illegal aliens); accord United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (holding that the lateness of hour could properly be considered as a factor in raising officer's level of suspicion of drug trafficking).

that he was nervous because of criminal activity;[4] the window on the driver's side of Powell's window would not roll down, leading Asby to believe from almost three decades of prior experiences that illegal narcotics were hidden in the compartment of the vehicle's door;[5] and Asby discredited Powell's story that he had been visiting a 'lady friend' and would be stopping in Dallas before returning to Wisconsin.

Of course most of these factors taken alone would be insufficient to raise a trained officer's suspicions to the requisite level of reasonableness, even an officer with as many years of service as Asby.  However, we believe as did the district court, that these particular facts, taken together as a whole, could support an experienced officer's, such as Asby's, suspicions of drug trafficking. Sokolow, 490 U.S. at 9-10 (cautioning that individual factors that may appear innocent in isolation may constitute suspicious behavior when aggregated together).  Indeed, "[t]he Supreme Court has emphasized the importance of allowing officers to 'draw on their own experience and specialized training' to make just such inferences from the facts available to them."  Brigham, 382 F.3d at 509 (quoting Arvizu, 534 U.S. at 273).  Accordingly, courts should err on the side of deferring to the knowledge and experiences of a trained law enforcement officer's ability to distinguish between

---

[4] See United States v. Sandford, 658 F.2d 342, 345-46 (5th Cir. Oct. 1981) (accrediting defendant's extreme nervous and visibly shaking hands as one of many factors to be considered in officer's determination that defendant fit the drug courier's profile); see also United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003) (recognizing that nervousness combined with other relevant factors gave rise to reasonable suspicion of drug activity); cf. Dortch, 199 F.3d at 199 (concluding that although nervousness alone is not sufficient to support reasonable suspicion of criminal activity, nervousness combined with other factors could).

[5] But see United States v. Jerez, 108 F.3d 684, 697 n.3 (7th Cir. 1997) (rejecting Government's assertion  that "vans or two-door vehicles . . . are favored by drug couriers because . . . one can 'hide a lot of controlled substance in the quarter panels'" as basis for formulating reasonable suspicion of drug trafficking).

innocent and suspicious activities.  United States v. Mendenhall, 446 U.S. 544, 563 (1980) (stating "it is important to recall that a trained law enforcement agent may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer'") (quoting Brown v. Texas, 443 U.S. 47, 52 n.2 (1979)).

To no avail, Powell relies on our prior holdings in Santiago and Jones to support his assertion that the facts on which the Government relies do not support a reasonable belief of drug trafficking. We conclude that, when taken in the light most favorable to the Government, these particular facts and circumstances can be distinguished from those upon which Powell relies.

In Santiago, a trooper pulled a motorist over on the belief that the motorist's view was unlawfully obstructed by trinkets hanging from the motorist's rearview mirror. 310 F.3d at 338-39. After stopping the motorist, the trooper asserted the following facts as his basis for reasonable suspicion that the car was stolen:  the driver appeared nervous because his hands were shaking, the driver was traveling straight through to a distant destination, the driver could not remember his wife's name, the driver's vehicle was registered in another woman's name who was not the defendant's wife, and the driver had an explanation that was inconsistent from that of his passenger as to the parties' ultimate destination.  Id.  Prior to requesting a consensual search of the defendant's vehicle, the trooper ran a computer check of the defendant's license and registration which eventually came back negative of anything untoward.  Id.  Instead of returning the defendant's license and registration, the trooper called for and waited for backup.  Id.  We concluded that the factors upon which the officer relied were insufficient as a basis for reasonable suspicion of drug activity because the officer had not articulated an objective basis to warrant a finding that Santiago had narcotics in his vehicle sufficient to justify the extended detention of him.  Id. at 342.

12

The distinguishing factors in the present case are: the highway and the hour at which Powell was traveling on raised Asby's suspicions of drug activity; Powell was visibly nervous when Asby approached the vehicle indicia of guilt of criminal activity; Powell's criminal arrest record, and Asby's almost three decades of law enforcement experience, leading him to disbelieve Powell's explanation regarding his travel plans, and to suspect that drugs were hidden in Powell's vehicle in the compartment of the vehicle's door. Contrarily, Santiago was stopped at 9:00 a.m; the highway on which he traveled was not deemed a major drug corridor; Santiago's computer check did not elicit that he had a prior arrest or criminal record; and there was no faulty window giving rise to suspicions by a detaining officer with almost three decades of experience, of concealed drugs in a manner which he had previously perceived. The factors in the instant case, taken in the light most favorable to the Government, do not suggest that the nine minute delay that transpired from the close of the computer check until the time that Asby's backup arrived and he obtained consent from Powell to search, was unreasonable in these circumstances.

Similarly, in Jones an officer pulled a motorist and his passenger over for a speeding violation. 234 F.3d at 237. The officer detained the defendant three minutes beyond the completion of the computer check, obtained the defendant's consent to search his vehicle, and subsequently found illegal narcotics. Id. at 241-42. The officer's basis for reasonable suspicion of drug activity pointed to the following facts: the defendant's inconsistent statement's regarding his place of employment, the defendant's contradictory responses about his passenger's employment, and the fact that the defendant's passenger had been previously arrested for a cocaine charge. Id. In those circumstances, we concluded that, based on the totality of the facts, that officer's three minute detention of Jones after the completion of the computer check was unreasonable in those circumstances. Id.

13

Again, Jones was stopped in the morning (11:57 a.m.); Jones was not traveling on a known drug corridor; neither Jones, nor his passenger, had criminal histories; and again, the faulty window in the instant case, combined with Asby's almost three decades of police experiences, militates, in this case, in favor of finding Asby's conduct reasonable.

Our holding in the present case should not in anyway detract from the import of our decisions in <u>Santiago</u> and <u>Jones</u>. Rather, the facts upon which the Government relies to support its claim of reasonableness here, and the district court's crediting of Asby's almost three decades of law enforcement experience, are far more persuasive factors than the facts asserted in the cases upon which Powell relies. As we have previously noted, "the Fourth Amendment only requires some minimal level of objective justification . . . measured in the light of the totality of the circumstances." <u>Rideau</u>, 969 F.2d at 1574. Following a complete review of the record, including the videotaped stop of Powell, we conclude that the district court's determination that the nine minute delay, following the computer check, in this circumstance, was not in error. The next question becomes – whether Powell's consent was validly given.

### B. Validity of the Consent To Search

Because Asby's nine minute delay of Powell did not violate established Fourth Amendment principles, this delay cannot be said to have tainted Powell's consent to search. There is no evidence in the record whatsoever suggesting that Powell's consent to search his vehicle was anything other than voluntary. <u>See</u> <u>Chavez-Villarreal,</u> 3 F.3d at 127. We therefore conclude that the search of the defendant's vehicle was not in violation of established Fourth Amendment principles.

### CONCLUSION

14

For the foregoing reasons, the district court's denial of Powell's motion to suppress was not in error.  Powell's conviction and sentence are therefore AFFIRMED.

AFFIRMED.