United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 22, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-21300

_____

WAYNE MICHAEL LINBRUGGER II,

Plaintiff - Appellee,

versus

JACK F. ABERCIA, Etc.; Et Al.,

Defendants,

JEFF HAGGARD, Deputy, in his individual capacity as deputy of
Harris County Constable Precinct 1,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Texas
Houston Division

---

Before GARWOOD and JONES, Circuit Judges, and ZAINEY*, District
Judge.

EDITH H. JONES, Circuit Judge:

This is an interlocutory appeal of the district court's
denial of a motion for summary judgment seeking qualified immunity.
Wayne Michael Linbrugger filed suit pursuant to 42 U.S.C. § 1983,
alleging that appellant Deputy Jeff Haggard, while executing a

---

*District Judge for the Eastern District of Louisiana, sitting
by designation.

mental health warrant, unlawfully entered Linbrugger's apartment and used excessive force to effectuate a temporary commitment order. Linbrugger included an assault claim against Haggard under Texas law. The district court believed that genuine issues of material fact precluded granting Haggard's summary judgment motion. We reverse the denial of summary judgment on the unlawful entry claim, but lack jurisdiction to address the federal excessive force and state law assault and battery claims.

## I.  BACKGROUND

On October 24, 2000, Linbrugger, a 37-year old man living by himself, repeatedly telephoned his father and ultimately threatened to kill his sister. Linbrugger's father knew that his son, who had been hospitalized for mental illness before, needed immediate psychiatric treatment. He applied for and obtained a judicial warrant from the Harris County Psychiatric Center ("HCPC") for Linbrugger's involuntary mental health commitment. Haggard and two other mental health deputies were assigned to serve the warrant on Linbrugger that evening.

The deputies contacted Linbrugger's father to obtain background information and coordinate his assistance in serving the warrant. Linbrugger's father told them he did not believe Linbrugger was dangerous or had any weapons. The deputies met Linbrugger's father at 10:00 p.m. near the entrance to Linbrugger's

2

apartment complex. As was customary for mental health deputies, they wore plain clothes and drove at least one unmarked patrol car.

The deputies instructed Linbrugger's father to knock on the apartment door and, when Linbrugger answered, to move aside so the deputies could state their reason for being there. Haggard and the two other deputies lined up against the outer wall of the apartment as Linbrugger's father knocked. Inside, Linbrugger testified, he heard two knocks on the door and feared he was about to be burglarized. To scare off intruders, Linbrugger picked up "The Club," an anti-theft device used on car steering wheels, and moved it back and forth to reproduce the sound of a shotgun's being cocked. Haggard, indeed, thought he heard the sound of a pump shotgun. Linbrugger then opened the door to his apartment wide enough to see who was outside, holding "The Club" as he did so. Haggard concurs: he saw Linbrugger holding a sword-like object above his head as the door opened.

From this point, the parties disagree about what occurred. What is certain is that the deputies then entered the apartment by pushing on the door. Haggard testified that he first yelled, "Drop the weapon" while stepping between Linbrugger and his father, and later yelled "Police, Harris County". However, Linbrugger does not recall the deputies identifying themselves. In addition, Haggard testified, while Linbrugger denies, that Linbrugger immediately began swinging "The Club" at him.

3

The parties' accounts continue to conflict over what happened in the apartment. Haggard asserts that the deputies had to subdue Linbrugger by force after his repeated attempts to hit Haggard with "The Club." Conversely, Linbrugger claims that although he placed "The Club" on the floor after the officers asked him if he intended to hit anyone with it, they nevertheless forced him to the ground. Linbrugger physically resisted the deputies' attempt to effectuate the warrant. But Linbrugger insists that Haggard went too far when he placed his knees on Linbrugger's neck, choked him, and repeatedly punched him in the face. Haggard denies using excessive force. The deputies eventually handcuffed Linbrugger and escorted him to the unmarked police car for transportation to HCPC. Linbrugger later received medical treatment for a cut above his eye, a bruised throat, and other bruises.

## II. JURISDICTION AND STANDARD OF REVIEW

This court reviews the district court's denial of a summary judgment motion based on a claim of qualified immunity de novo. Hatfield v. Scott, 306 F.3d 223, 226 (5th Cir. 2002).

Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A two-step analysis governs whether public officials are entitled to

4

qualified immunity. First, we must determine whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right. Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001). If no constitutional right has been violated, the inquiry ends and the defendants are entitled to qualified immunity. Id. However, if the plaintiff has alleged a constitutional violation, the court must next determine whether the official's conduct was objectively unreasonable under established law. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

We have jurisdiction to consider the legal question whether, taking the plaintiff's version of the facts as true, the plaintiff has alleged a violation of clearly established constitutional law. Roe v. Tex. Dep't of Protective & Regulatory Serv., 299 F.3d 395, 400 (5th Cir. 2002). However, "[i]f disputed factual issues are material to qualified immunity, the denial is not appealable." Id. Materiality means that their resolution might affect the outcome of the case under governing law. Colston v. Barnhart, 146 F.3d 282, 284 (5th Cir. 1998) (on denial of rehearing en banc). We disagree with the district court's evaluation that certain factual disputes were material to Haggard's qualified immunity for the unlawful entry claim. Consequently, we resolve that claim as a matter of law. As will be seen, however, we agree that material factual disputes preclude a resolution of Haggard's qualified immunity concerning Linbrugger's other claims.

5

## III.  DISCUSSION

### A.  Unlawful Entry

Linbrugger asserts that Haggard unlawfully entered his apartment in violation of the Fourth Amendment's guarantee against unreasonable searches and seizures.  Generally, the Fourth Amendment's guarantees apply in both criminal and civil contexts. See Soldal v. Cook County, Ill., 506 U.S. 56 (1992); Wooley v. City of Baton Rouge, 211 F.3d 913, 925 (5th Cir. 2000).  In addition, our sister circuits have held that the Fourth Amendment applies when government officials execute a mental health warrant.  See Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999); Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997); Gooden v. Howard County, Md., 954 F.2d 960, 968 (4th Cir. 1992).  Thus, we apply Fourth Amendment standards to this case, while observing that, although it has not been timely argued here, the balance struck in the criminal context between an individual's rights and the government's law enforcement imperatives may require modification in the field of mental health activity.[1]

---

[1]The First Circuit addressed this issue in McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540 (1st Cir. 1996), which found a city policy permitting forcible, warrantless entries by police officers in possession of an involuntary commitment order reasonable under the Fourth Amendment.  77 F.3d at 547.  The court held that, under the "special need" exception, the State's administrative interest in ensuring that mentally ill persons not harm themselves or others, which would likely be defeated by requiring officers to obtain a warrant, outweighed the individual's

The Fourth Amendment incorporates the common-law principle that officers must knock and announce their identity and purpose before attempting forcible entry of a dwelling.[2] <u>Wilson v. Arkansas</u>, 514 U.S. 927, 934 (1995). As long as police officers do not use force, they may attempt to gain entry to a dwelling by deception. <u>Lewis v. United States</u>, 385 U.S. 206, 211-12 (1966). Thus, the recruitment of Linbrugger's father to gain entry into the apartment, if characterized as a subterfuge, did not violate the Fourth Amendment.[3] Nevertheless, the knock-and-announce rule continues to apply to a later forcible entry. <u>See</u> <u>Richards v. Wisconsin</u>, 520 U.S. 385, 388, 395 (1997) (finding that, after a failed entry by deception, the officers' noncompliance with the knock-and-announce requirement was reasonable).

---

Fourth Amendment interests. <u>Id</u>. at 547-53.

Haggard makes a similar "special needs" argument for the first time in his reply brief; thus, the argument is waived. <u>See</u> <u>Morin v. Moore</u>, 309 F.3d 316, 328 (5th Cir. 2002). Linbrugger's motion to strike the portion of Haggard's reply brief addressing a mental health "special need" exception is granted.

[2]Neither party in this case argues that 18 U.S.C. § 3109, the "knock and announce" statute, applies to the state officers who executed the warrant.

[3]For purposes of this discussion, we assume that the deputies used Linbrugger's father to obtain his cooperative submission to commitment. Labelling this procedure a "ruse" is unfair to the authorities, however. Family members are often best equipped to reason with or calm a mentally ill person. Their presence at the scene of apprehension is on balance desirable, though it may occasionally enhance the danger of a violent encounter.

Even in the criminal law enforcement context, however, the Supreme Court holds that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." Wilson, 514 U.S. at 934. Countervailing circumstances may include "a reasonable suspicion that knocking and announcing [the police] presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards, 520 U.S. at 394. The reasonableness of the officer's decision must be evaluated "as of the time [he] entered the [dwelling]." Id. at 395. Significantly, "a police officer views the facts through the lens of his police experience and expertise." Ornelas v. United States, 517 U.S. 690, 699-700 (1996). Further opining in regard to arrests pursuant to criminal warrants, this court has not required officers to demonstrate "particularized knowledge" that a suspect is armed in order to justify a no-knock entry. United States v. Washington, 340 F.3d 222, 227 (5th Cir. 2003); see also United States v. Howard, 106 F.3d 70, 75 (5th Cir. 1997); United States v. Rodea, 102 F.3d 1401, 1408 (5th Cir. 1996).

Taking Linbrugger's version of disputed facts as true, none of the deputies identified themselves before barging through

8

the door to apprehend him.[4]  There was a knock, but no formal "announcement" of their identity and purpose.  The question is therefore whether the Constitution was clearly violated by this failure.

Linbrugger argues that no exception should be made to the knock-and-announce rule in this case.  He was entitled to resist what he perceived as a possible home invasion.  Because Linbrugger was acting within his rights of self-defense under Texas law, Deputy Haggard had no legitimate safety concern justifying his pretermitting an announcement.  Further, Linbrugger asserts that the officers' safety concerns were "manufactured."  They mismanaged the situation in arriving at his apartment late at night, announcing their presence only with two knocks and jumping out of nowhere at him when he opened the door.  Had the officers knocked and announced, as required by Linbrugger's view of the Constitution, he would not have felt compelled to fight.

What this argument overlooks is that the Fourth Amendment's reasonableness standard is not violated merely because, in cool hindsight, it appears that government officials could have executed a warrant less intrusively.  See United States v. Sharpe, 470 U.S. 675, 686-87, 105 S. Ct. 1568, 1575-76 (1985) ("The

_____

[4]The district court discerned fact issues regarding whether Linbrugger was swinging the Club; whether Haggard announced himself; and whether Haggard "jumped out of nowhere."  Drawing all inferences in Linbrugger's favor, Haggard is entitled to qualified immunity.

9

question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it."). Reasonableness, to the contrary, is judged in light of often rapidly unfolding circumstances, viewed from the officers' perspective. United States v. Banks, 124 S. Ct. 521, 527 (2003); Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). These consistent principles infuse Fourth Amendment reasonableness standards in general and those applicable to the knock-and-announce rule in particular.

Viewing the execution of the mental health warrant from the officers' perspective, Haggard and the other deputies knew, from the affidavit of Linbrugger's father, that Linbrugger was attested to be a threat to himself and others. His father had sworn that, on the same day, Linbrugger threatened to put a bullet through his sister's head, and a judicial officer found these statements sufficient under state law to commit him involuntarily for psychiatric treatment. Linbrugger's father accompanied the officers precisely to defuse his son's tension. It was reasonable for the officers to position themselves out of Linbrugger's immediate line of sight so that he would focus on his father when opening his apartment door. They did not anticipate hearing the sound of a shotgun being primed, as Linbrugger's father believed his son had no weapons. But that sound had to change their approach. Linbrugger does not contend that more than a few seconds

10

elapsed between his father's knock at the door, his decision to pretend to cock a gun, and his opening the door with an arm raised, holding "The Club."

Under these circumstances, Linbrugger's self-defense was, from the officers' perspective, imminently threatening to them, to his father and possibly to himself. Only in hindsight can one argue that, faced with this sudden development, the officers should have completed a formal knock-and-announce. That they might have done so is arguable. That they were constitutionally required to do so is out of the question. They were permitted to respond reasonably to a reasonably perceived dangerous situation. Forcing their way into Linbrugger's apartment was a reasonable tactic.

Linbrugger also asserts that the officers manufactured the exigency that permits them to claim an exception from the knock-and-announce rule. He relies on a footnote in one Fifth Circuit opinion which implies that the concept of manufactured exigency can apply to the execution of a search warrant. See Cantu v. United States, 230 F.3d 148, 153 n.1 (5th Cir. 2000). The principal holding of Cantu is that the police did not act reasonably when, with no prior knowledge that Cantu or the occupants of his residence were armed or dangerous, they attempted to execute a search warrant by means of a forcible burglar-like entry in the middle of the night. The footnote, however, notes, in passing, that "manufactured exigent circumstances" do not justify

dispensing with the announcement requirement, "especially when the initial attempt itself is unreasonable." Id. (citations omitted). Cantu does not discuss whether "exigent circumstances" create an exception to the Fourth Amendment's warrant requirement. Thus, whether exigent circumstances, or its converse "manufactured exigent circumstances", should apply to the manner in which police undertake a warranted entry is not clear, nor does Cantu broach that subject. We assume that in the footnote in question, Cantu simply drew an analogy to cases involving "manufactured exigent circumstances". Moreover, when the police have been judicially warranted to enter a dwelling, the question of reasonableness surrounds their decision whether to knock and announce. The test of reasonableness overlaps and subsumes whether they have manufactured exigent circumstances that unreasonably dispense with a knock-and-announce; considering exigent circumstances, and its converse, seems redundant. It is dubious that Cantu stated a rule binding on this circuit or that the consideration of manufactured exigent circumstances adds meaningfully to the knock-and-announce rule.

Nevertheless, we need not finally dispose of such questions in this opinion, as the factual predicate for manufactured exigent circumstances does not exist here. The mental health officers did not attempt to enter Linbrugger's apartment in an unreasonable fashion. They did not create an atmosphere

12

calculated to inflame Linbrugger and excuse a forcible entry. Instead, it is plain that Linbrugger reacted in an unanticipated manner to their knocks on the door and events escalated from there.

For all these reasons, Deputy Haggard did not participate in violating any constitutional law, much less clearly established constitutional law, when he and the other officers failed to complete their compliance with the knock-and-announce rule. According to Saucier v. Katz, because "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

## B.  Excessive Force

This court analyzes a claim of excessive force in the course of a seizure under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989). To prevail on an excessive force claim, Linbrugger must show "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996). Haggard maintains that the district court erred in denying his motion for summary judgment on Linbrugger's excessive force claim because his use of force was objectively reasonable in the circumstances. However, the summary judgment record raises several questions of material fact that preclude this court's jurisdiction.

13

As was previously explained, the parties disagree strenuously over Linbrugger's actual or perceived provocation and resistance and the extent and proportion of the deputies' response. That Linbrugger suffered some injuries, including a cut above his eye and a bruised throat, is undisputed.

Given these material factual disputes, the court is unable to determine whether Haggard used excessive force that was objectively unreasonable when taking Linbrugger into custody. We lack jurisdiction to consider the genuineness of these factual disputes on appeal. See Johnson v. Jones, 515 U.S. 304, 313 (1995); Colston, 146 F.3d at 284.

### C. State Law Claim

Linbrugger claims that the same conduct comprising the excessive force claim, specifically choking and punching, also constitutes assault and battery under Texas law. Haggard seeks official immunity from this claim as well. Under Texas law, government officials have "official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994). "[O]rders premised on the denial of qualified immunity under Texas state law are appealable in federal court to the same extent as district court orders premised on the denial of federal law immunity." Cantu v. Rocha, 77 F.3d 795, 804 (5th Cir.

14

1996).  Therefore, "[t]he issue then becomes whether the district court's denial of [Haggard's] summary judgment motion[] on the issue of immunity turned on a question of law . . . ."  Id. (internal quotations omitted).  Because genuine issues of material fact exist regarding whether Linbrugger attempted to strike Haggard with "The Club," Haggard's actions, and the severity of Linbrugger's injuries, this court lacks jurisdiction to consider this portion of the appeal.

## IV.  CONCLUSION

For the reasons stated above, we **REVERSE** that portion of the district court's order denying summary judgment based on qualified immunity for the unlawful entry claim and **RENDER** judgment in favor of Haggard as to that claim.  We **DISMISS** that portion of Haggard's appeal challenging the district court's order denying his motion for summary judgment on Linbrugger's excessive force and state law assault and battery claims.  Because these claims remain unresolved, we **REMAND** this case to the district court for further proceedings.  Linbrugger's motion to strike those portions of Haggard's reply brief advancing a "special needs" argument is **GRANTED**.

**REVERSED and RENDERED in part; DISMISSED in part; case REMANDED; motion to strike GRANTED.**

15

JAY ZAINEY, District Judge, concurring:

I join in the majority opinion as a correct disposition under the facts specific to this case.  I write separately, however, to express my disagreement with Haggard's "special needs" argument.  It is my opinion that the Fourth Amendment mandate that officers knock and announce their identities, absent exigent circumstances, applies in the field of mental health activity.  Likewise, I disagree with the First Circuit's decision in McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540 (1st Cir. 1996), discussed in footnote one of the opinion, which held that warrantless, forcible entries by police officers in possession of an involuntary commitment order were reasonable under the Fourth Amendment.  Therefore, if Haggard had timely raised the special needs argument, I would have concluded that a per se exception to the knock and announce requirement in mental health cases does not comport with the Fourth Amendment reasonableness requirement.

16