# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 9, 2012

No. 11-50010

Lyle W. Cayce
Clerk

LINDSEY BISHOP; CAROLYN CLARK,

Plaintiffs - Appellants

v.

TONY ARCURI, in his individual capacity; CITY OF SAN ANTONIO,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before DENNIS, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Lindsey Bishop and Carolyn Clark ("Appellants") appeal the district court's grant of summary judgment in favor of Tony Arcuri and the City of San Antonio (the "City") on their claim, pursuant to 42 U.S.C. § 1983, that San Antonio Police Department ("SAPD") officers, led by Arcuri, violated Appellants' Fourth Amendment rights by failing to knock-and-announce their identity and purpose prior to forcibly entering Appellants' home to execute a search warrant. We reverse.

No. 11-50010

## I. FACTS AND PROCEEDINGS

The relevant facts are largely undisputed. On April 27, 2009, a confidential informant told Detective Arcuri that he had purchased methamphetamine from a man named "Randy" at a home in Leon Valley, a small municipality entirely encompassed within the City of San Antonio. The informant further told Arcuri that Randy was allowing others to "cook" methamphetamine at the same house. Arcuri alleges that the informant, whose identity remains confidential, had given him credible information in the past. The following day, Detective Arcuri obtained a warrant to search for methamphetamine at the residence from Magistrate Judge Marion Cavazos.

Before executing the search warrant, Arcuri conducted an investigation of the residence. He determined that: women, not anyone named Randy, paid the taxes and utility bills for the house; the car parked in the driveway was registered to appellant Clark; and there was no history of criminal activity associated with the property or its known residents. Arcuri also surveilled the premises and observed that someone appeared to be at home, but he was not able to determine the identity of anyone inside.

Although his reasons are disputed, Arcuri decided to execute the warrant without knocking and announcing his team's identity and purpose. The decision to make a no-knock entry was approved by Arcuri's supervising sergeant, William Hunt. Around 9:40 p.m., Arcuri and his search team, consisting of seven plain-clothes SAPD detectives and one uniformed Leon Valley officer, forcibly entered the house using a battering ram to knock in the front door. Clark was at the back of the home when the officers came in the front door. Two armed officers approached her and ordered her to lie down on the floor where she was handcuffed. Bishop was in her bedroom undressed and looked out when she heard the commotion. Officers entered her bedroom, gave her a shirt and pants, and waited while she dressed. Bishop was then handcuffed. Both Appellants

2

No. 11-50010

were questioned regarding their operation of a methamphetamine laboratory. They denied any involvement with illegal drugs. When the officers' initial search failed to uncover any evidence of drugs, a narcotic detection dog was brought in to search the home, but it too found no evidence of drugs. Appellants were cooperative throughout the search. The officers eventually un-cuffed Appellants and departed. The raid lasted a total of approximately an hour and 45 minutes. Appellants were not the subject of any further investigation.

On September 14, 2009, Appellants filed suit pursuant to 42 U.S.C. § 1983 against the City of San Antonio and the nine officers involved in the search of their home, alleging that they were subjected to excessive force, false arrest, and an unreasonable search. The district court dismissed all of Appellants' claims against the individual defendants and all but the unreasonable search claim against the City under Federal Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The district court then granted Appellants' motion to amend, and they amended their complaint to state a claim against Arcuri for the allegedly unreasonable no-knock search. The City and Arcuri both moved for summary judgment on the unreasonable search claim. In a Memorandum and Recommendation submitted on September 3, 2010, a magistrate judge recommended that the district court deny both motions. The district court rejected the recommendation of the magistrate judge, concluded that the no-knock entry was reasonable under the Fourth Amendment, and granted summary judgment in favor of both defendants.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, applying the same standards as the district court. *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is no genuine issue for

No. 11-50010

trial "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). We view the evidence in the light most favorable to the nonmoving party. *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

We also review a grant of qualified immunity de novo. Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> A two-step analysis governs whether public officials are entitled to qualified immunity. First, we must determine whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right. . . . [I]f the plaintiff has alleged a constitutional violation, the court must next determine whether the official's conduct was objectively unreasonable under established law.

*Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (citations omitted).

## III. DISCUSSION

### A. Fourth Amendment Violation

We first address the district court's conclusion that the search of Appellants' home was reasonable within the meaning of the Fourth Amendment. The specific question before this court is whether exigent circumstances justified Arcuri's decision, which was approved by his immediate superior, to enter Appellants' home without knocking and announcing his team's identity and purpose. Because Arcuri has relied almost exclusively on generalizations that are legally inadequate to create exigent circumstances, we conclude that the no-knock entry was unreasonable under the Fourth Amendment.

The Fourth Amendment incorporates the common-law principle that officers must knock and announce their identity and purpose before attempting forcible entry of a dwelling. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). The general knock-and-announce requirement, however, is not "a rigid rule of

No. 11-50010

announcement that ignores countervailing law enforcement interests." *Id.* Countervailing circumstances may include "a reasonable suspicion that knocking and announcing [the police] presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). "The reasonableness of the officer's decision must be evaluated 'as of the time [he] entered the [dwelling].'" *Linbrugger*, 363 F.3d at 542 (quoting *Richards*, 520 U.S. at 395).

There is no dispute that Arcuri's search team entered Appellants' home without knocking and announcing their identity and purpose. Arcuri argues the no-knock entry was justified because of "exigent circumstances." Specifically, Arcuri asserts that: (1) he "held a reasonable suspicion that any methamphetamine located at the premises could be easily and readily destroyed if he announced his team's presence," and (2) his "team's safety was in danger due to the inherent dangers of making an entry to execute a drug warrant." Appellants respond that, even accepting his version of the facts, Arcuri's proffered justifications for the no-knock entry are legally inadequate because they do not rest on any *particularized* circumstances. We consider each of Arcuri's asserted justifications in turn.

*1. Destruction of Evidence*

A no-knock entry is permissible under the Fourth Amendment if police have "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, . . . would inhibit the effective investigation of the crime by . . . allowing the destruction of evidence." *Richards*, 520 U.S. at 394. Arcuri argues that the informant tip gave him reason to believe that small quantities of methamphetamine, which could be easily disposed of, were present in the home. He asserts that the disposable nature of methamphetamine,

5

No. 11-50010

together with the general prevalence of evidence destruction in drug cases, is enough to justify a no-knock entry.[1]

The Supreme Court has rejected the contention that the execution of all drug-related search warrants inherently pose a substantial risk of evidence destruction. *Richards*, 520 U.S. at 394; *see also United States v. Washington*, 340 F.3d 222, 226 (5th Cir. 2003). Arcuri's reliance on the disposable nature of methamphetamine and a general assertion about the prevalence of evidence destruction in drug cases is hardly distinguishable from the blanket rule, rejected by a unanimous Court in *Richards*, that knocking-and-announcing is never required when executing a search warrant in a felony drug investigation. Moreover, in applying *Richards* we have previously held, in a case with similar underlying facts involving the nighttime execution of a narcotics search warrant at a home while the residents were present, that it was "clear that the [no-knock] search of [the] residence was unreasonable under Fourth Amendment analysis." *United States v. Cantu*, 230 F.3d 148, 153 (5th Cir. 2000). We rested that conclusion in part on the fact that the officers "were unable to point to anything [aside from some movement within the home] that would indicate that evidence was being destroyed." *Id.* at 150.

Similarly, in *United States v. Valdez*, 302 F.3d 320 (5th Cir. 2002), we concluded that police had violated the Fourth Amendment by forcibly entering a home immediately after knocking to execute a narcotics search warrant. We rejected the assertion of "exigent circumstances," noting that there "was no testimony that any officer heard movements inside [the] home suggesting that

---

[1] The City argues that Arcuri's decision was justified by his knowledge of the specific layout of the house. In fact, Arcuri, who does not press this argument, never asserted that any specific feature of the house increased the general likelihood of evidence destruction.

No. 11-50010

evidence was being destroyed." *Id.* at 322.[2] Although Arcuri observed that someone was in the house, he did not establish the identity of the occupants and has never alleged that he detected movement within the home that suggested evidence was being destroyed. Both *Cantu* and *Valdez* involved drugs that presumably were disposable in nature, but this fact was not enough to constitute exigent circumstances.

In *Richards*, the Supreme Court ultimately upheld an unannounced forcible entry as reasonable because, before the officers identified themselves, the suspect recognized them as police and slammed the door on them. "These actual circumstances—petitioner's apparent recognition of the officers combined with the easily disposable nature of the drugs—justified the officers' ultimate decision to enter without first announcing their presence and authority." 520 U.S. at 396. Nothing in Arcuri's deposition testimony or briefing suggests that he had any reason to believe that evidence was in danger of being destroyed *before* the inhabitants knew police were on the premises. Thus, the Court's reasoning in *Richards* indicates that the risk of evidence destruction had not yet ripened into "exigent circumstances" sufficient to justify a no-knock entry at the time just before Arcuri's team entered Appellants' home. *Cf. United States v. Banks*, 540 U.S. 31, 36 (2003) (no-knock entry justified only where "exigency already exists or will arise *instantly* upon knocking" (emphasis added)).

Also instructive is the Supreme Court's analysis of the length of time police must wait *between* knocking-and-announcing and forcibly entering a residence. In *Banks*, the Supreme Court held that a 15–20 second wait was reasonable when executing a warrant for cocaine. 540 U.S. at 38.[3] Importantly,

---

[2] In *Valdez*, we affirmed "the judgments and rulings of the district court" and incorporated the entirety of the district court's order into our opinion as an Appendix.

[3] The Court simply assumed as a starting point that the officers were required to knock-and-announce. *Banks*, 540 U.S. at 35.

the government conceded that the police arrived at the suspect's house "without reasonable suspicion of facts justifying a no-knock entry," despite the fact that they were expecting to find easily disposable drugs. The Court accepted the government's argument that the announcement of police presence "started the clock running toward the moment of apprehension that [the suspect] would flush away the easily disposable cocaine, prompted by knowing the police would soon be coming in," so the only question was whether 15–20 seconds was a reasonable time to wait. The Court concluded that "after 15 or 20 seconds without a response, police could fairly suspect that cocaine would be gone if they were reticent any longer." *Id.* The Court's reasoning makes clear that when police are afraid that announcing their presence and purpose will *prompt* the destruction of evidence, the appropriate constitutional inquiry is how long they must wait to enter after they have announced, not whether they should announce at all.

Arcuri points only to the quantity of drugs he expected to find as a particular circumstance justifying his team's no-knock entry.[4] At least some of the summary judgment evidence indicated that small, retail quantities of methamphetamine were being sold from Appellants' house. But the presence of retail quantities of an easily disposable drug is legally insufficient, without more, to constitute the type of exigency needed to justify a no-knock entry. *Richards*,

---

[4] Appellants argue that even if the suspected presence of a small quantity of easily-disposable drugs were sufficient to justify a no-knock entry, Arcuri is not entitled to summary judgment on qualified immunity grounds because there is a factual issue concerning whether Arcuri genuinely believed there was a threat of evidence destruction. Arcuri's deposition testimony and affidavit arguably support the conclusion that Arcuri did not perceive a genuine risk of evidence destruction. For example, although he described evidence destruction as "common practice" in drug cases, when asked why he thought it was going to happen in this "specific instance," he responded, "I didn't think it was going to happen." Arcuri also gave equivocal testimony about the quantities of drugs he expected to find, stating at some places that he hoped to find a meth lab, and at others that he expected to find only small quantities that would be easily disposable. Because we have accepted Appellants' primary argument that a small quantity of methamphetamine was inadequate to produce exigent circumstances, we need not determine whether Arcuri's statements create a genuine factual dispute.

No. 11-50010

*Banks*, and *Cantu* all involved searches similarly based on information that drugs were being dealt from the house in question. Arcuri has not even alleged, much less demonstrated through specific facts, that a threat of evidence destruction existed before the occupants of the home knew police were on the premises. Under these circumstances, the disposable nature of methamphetamine was not enough to create exigent circumstances justifying a no-knock entry. In light of *Richards* and *Banks*, had Arcuri announced his team's presence and purpose, the threat of evidence destruction may have amounted to exigent circumstances after a very short time—perhaps only a few seconds—but Arcuri's no-knock entry cannot be justified on evidence-destruction grounds.

### 2. Dangerousness

Arcuri also argues that his team's no-knock entry was justified by his reasonable suspicion that announcing their presence would have put them in danger. Arcuri concedes, however, that his safety concerns were based on generalities about the dangerousness of drug dealers. For example, in the affidavit he submitted to the district court, Arcuri stated that "it is extremely common for individuals selling or possessing narcotics to have some type of weapon at the location where they are selling illegal drugs from." Similarly, in his deposition, Arcuri stated, "[I]t's considered a high risk because anytime you're dealing with individuals that possess or sell narcotics, they have a high tendency to have, you know, some type of weapon." Arcuri has never attempted to connect his belief that knocking-and-announcing would have been dangerous to any specific facts discovered during his investigation of the Appellants' residence. Arcuri did not recall that the municipal court or police records he reviewed indicated any law enforcement history associated with the home or its residents, and the car parked outside the house was registered to Carolyn Clark, not "Randy" or any known drug-dealer. In fact, Arcuri admits that "his

9

No. 11-50010

investigation revealed no particularized facts suggesting that he or his team were making a high risk entry aside from the dangers inherent to making an entry involving drugs."

Moreover, it is clear from Arcuri's brief that he treated no-knock entries as the *default* mode of executing drug-related search warrants: "Despite their investigation and surveillance, the officers were not able to learn any information indicating that Randy or any other occupants of the premises *did not* pose a threat to the officers' safety upon entry."

Arcuri readily admits that he had no particularized basis for his safety concerns because he mistakenly asserts that the general dangerousness of drug-related criminals is sufficient justification for conducting a no-knock entry. His position is based on a misreading of two Fifth Circuit cases: *Washington* and *Linbrugger*. In *Washington*, this court held a no-knock entry reasonable under the Fourth Amendment where police had specific information that a convicted felon, who "always carried a firearm on his person," was selling drugs from a room at a halfway house in which an informant had observed a weapon. 340 F.3d at 224. We held that such information "exceeds the level this circuit has found sufficient to establish a reasonable suspicion of danger." *Id.* at 227. *Linbrugger* was a qualified immunity case concerning officers who had made a no-knock entry while executing an involuntary mental health commitment warrant. We concluded that the officers "respond[ed] reasonably to a reasonably perceived dangerous situation" because the target of the warrant, who had recently threatened to kill his sister and whom his father considered to be a threat to himself and others, intentionally simulated the sound of a shotgun being primed to make the officers believe he was armed. 363 F.3d at 543. Considering the totality of these circumstances, the panel had little trouble holding that the officers were not required to complete a normal knock-and-announce procedure. *Id.*

10

No. 11-50010

Both *Washington* and *Linbrugger* dealt with no-knock entries that were clearly justified by reasonable safety concerns. In each case, the police knew the identity of the occupant of the dwelling they entered and had specific information indicating that the person might be dangerous. Arcuri, on the other hand, made a no-knock entry into a house when he had admittedly not established who was home and had no specific information that the inhabitants were dangerous. Despite these obvious differences, Arcuri relies heavily on the court's statement in *Washington*, cited in *Linbrugger*, that an officer's safety concerns may be "reasonable even though he had no particularized knowledge that the suspect was armed." *Washington*, 340 F.3d at 227; *Linbrugger*, 363 F.3d at 542. Arcuri apparently interprets this language to mean that generalizations about the dangerousness of drug-related criminals are sufficient to justify a no-knock entry.

Admittedly, some of the language in *Washington*, read in isolation, appears to support Arcuri's position. *Washington* considered the reasonableness of a no-knock entry, but in its discussion of the officer's safety concerns, it drew analogies to Fifth Circuit cases considering the reasonableness of warrantless searches. In such cases, this court has used a five-factor test to evaluate whether exigent circumstances justify a warrantless entry, of which one relevant factor is "the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought." *See United States v. Howard*, 106 F.3d 70, 73 (5th Cir. 1997).[5] In this context, which is distinct from our circuit's knock-and-

---

[5] The five factors are: "(1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) [the] reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." *Howard*, 106 F.3d at 73. Concern for safety is not, by itself, sufficient to justify a warrantless entry—there must also be exigent circumstances that preclude the officers from simply leaving the scene and returning later. Thus, in the

No. 11-50010

announce jurisprudence, this court has counted fear for safety as "*a factor* favorable to the Government in the exigent circumstances calculation" even where the officer lacks a "particularized fear." *Id.* at 75 (emphasis added). Thus, noting that "firearms are the tools of the trade of those engaged in illegal drug activities," we have considered the general dangers posed in drug cases to weigh in favor of finding a warrantless search justified. *Id.* (internal quotation marks omitted). This hardly establishes that the general dangerousness of drug-related criminals, by itself, justifies a no-knock entry for the execution of all narcotics warrants.[6]

Indeed, Arcuri's reading of *Washington* as allowing for no-knock entries based on a general assessment of the dangers associated with drug crimes is definitively foreclosed by *Richards*, as we acknowledged in *Washington*. 340 F.3d at 226 ("The [Supreme] Court [has] rejected the contention that all drug investigations inherently have risks of officer safety" substantial enough to excuse police from the knock-and-announce requirement.). Likewise, in *Cantu* we characterized *Richards* as "reject[ing] blanket rules allowing 'no-knock' entries based on over-generalizations about today's drug culture." 230 F.3d at 152; *see also Valdez*, 302 F.3d at 322 ("[The officer] justified the entry of her

---

warrantless entry context, officers are stuck between a rock and a hard place: either act now on limited information or risk letting the bad guys get away with their crime. In such circumstances, it is reasonable to excuse officers from making a particularized showing of dangerousness because they are, by hypothesis, left without time to conduct a further investigation of the threat they might be facing. On the other hand, Arcuri has never attempted to show that there was any urgency requiring the search of Appellants' home to take place exactly when it did. He therefore has less justification for treating "unknowns" as a reason to bypass a general constitutional requirement.

[6] Importantly, in the warrantless entry analysis, concern for safety is considered a "plus factor" for the government only if the threat exists while the officers wait to make an entry. By contrast, in the no-knock analysis, the relevant safety concerns typically arise from the entry itself. Arcuri has never asserted that his team felt endangered before they entered the home, making the discussion of safety concerns in warrantless entry cases inapposite. *See Valdez*, 302 F.3d at 322 ("No exigent circumstance existed outside Defendant's home.").

No. 11-50010

team's [sic] on the grounds that Defendant was a known drug dealer and that known drug dealers are prone to certain violent behavior. Such justification has been clearly rejected by the Fifth Circuit.").[7] Arcuri relies heavily on such over-generalizations.

Reading *Washington* together with *Richards* and its progeny, the law in this circuit is that, as stated in *Linbrugger*, a police officer does not have to "demonstrate 'particularized knowledge' that a suspect is armed in order to justify a no-knock entry," 363 F.3d at 542, but that does not negate the requirement that "reasonable suspicion" must be derived from specific facts and circumstance surrounding a search. Because "reasonable suspicion of danger" is a lower threshold than "particularized knowledge" that a suspect possesses a weapon, an officer must be able to point to specific facts to explain his safety concerns but need not demonstrate that he specifically knew a certain suspect was armed. Thus, contrary to Arcuri's suggestion, *Washington* and *Linbrugger* are entirely consistent with the requirement that he point to something beyond the general dangers associated with drug crimes to justify his entry into Appellants' home. Obviously neither *Linbrugger* nor *Washington* could or did eliminate the requirement announced in *Richards* that, to justify a no-knock entry on grounds of officer safety, an officer must have "a reasonable suspicion" based on "the particular circumstances" that knocking-and-announcing would be dangerous. 520 U.S. at 394. Because Arcuri admits that he had no such particularized suspicion of danger, he unwittingly concedes that his team's no-knock entry was not justified by safety concerns.

In sum, neither Arcuri's concerns for evidence preservation nor for officer safety amounted to reasonable suspicion based on particular facts, so exigent

---

[7] *See also Price v. State*, 93 S.W.3d 358, 364 (Tex. App.—Houston [14th Dist.] 2002) ("The mere assumption that those in possession of controlled substances are normally also in possession of firearms is insufficient as a matter of law to eliminate the notice requirement.")

circumstances did not justify his team's no-knock entry of Appellants' home. The entry therefore violated Appellants' Fourth Amendment rights.

## B. Qualified Immunity

Having concluded that the no-knock entry led by Arcuri violated Appellants' Fourth Amendment right to be free from unreasonable searches, we now turn to the second prong of qualified-immunity analysis: whether Arcuri's conduct was objectively unreasonable under established law. "For a right to be clearly established under the second step of the qualified immunity analysis, '[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Flores v. City of Palacios*, 381 F.3d 391, 399–400 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[I]f a right is clearly established enough to impart fair warning to officers, then their conduct in violating that right cannot be objectively reasonable." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1002 n.12 (5th Cir. 2003).

At the time of the search, the Supreme Court's unanimous decision in *Richards* rejecting a blanket exception to the knock-and-announce requirement for narcotics searches had been on the books for twelve years. As discussed above, Arcuri's proffered justifications for his team's no-knock entry—evidence preservation and officer safety—were based primarily on generalities rather than particularized suspicion, and his position is therefore virtually indistinguishable from the type of blanket rule repudiated in *Richards*. Moreover, multiple decisions of this circuit, and of the Texas state courts[8] have

---

[8] *See, e.g.*, *Price*, 93 S.W.3d at 368 ("In light of *Richards* and *Wilson*, we decline to permit officers to invoke the destruction of evidence exception whenever the objects named in the search warrant are by their nature amenable to ready disposal or destruction."); *Brown v. State*, 115 S.W.3d 633, 639 (Tex. App.—Waco [10th Dist.] 2003) (holding no-knock search unconstitutional where "there was no testimony or evidence that either [of the suspects] were violent or were known to keep weapons in their home"). Indeed, the Texas courts arguably interpret *Richards* more stringently than does this court. *See, e.g.*, *Ballard v. State*, 104

reinforced the applicability of the knock-and-announce requirement to searches indistinguishable from the one conducted on Appellants' home. Arcuri's no-knock entry of Appellants' home, based only on generalized concerns about evidence preservation and officer safety, violated clearly established law and was therefore unreasonable. *See Williams*, 352 F.3d at 1002 n.12.

Because the rights violated by Arcuri's team were well-established at the time of the raid, Arcuri's actions were unreasonable, and he is not entitled to qualified immunity.

## C. Municipal Liability

"[M]unicipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008) (internal quotation marks omitted). A municipality is liable only when its policy is the "moving force" behind the suffered injury, *Williams*, 352 F.3d at 1014, but when a municipal policy itself violates federal law, such a policy necessarily constitutes the "moving force." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). Appellants concede that the formal written policies of the SAPD are constitutional. The City's "official policies," however, include any "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). Appellants argue that the

---

S.W.3d 372, 383 (Tex. App.—Beaumont [9th Dist.] 2003) ("[T]he mere presence of a handgun . . . is insufficient, as an exigent circumstance exception to the knock-and-announce rule, where the State does not also prove the authorities possessed information that the individual(s) subject to the warrant was likely to use the weapon, was likely to become violent, had a criminal record reflecting violent tendencies, or a verified reputation of a violent nature.").

No. 11-50010

City is liable for the damages caused by Arcuri's team's entry into their home because the SAPD has a customary policy of making no-knock entries on less than reasonable suspicion.

The district court did not reach the issue of municipal liability because it concluded that no constitutional violation had occurred, but the magistrate judge had concluded that a genuine issue of fact existed regarding the existence of an SAPD custom. Having concluded that there was a constitutional violation, we agree with the magistrate judge that the City is not entitled to summary judgment.

The City affirmed, in its Rule 36 responses to request for admissions, that the search of Appellants' home was consistent with SAPD policy. Thus, Appellants argue that if the court concludes the search violated Appellants' Fourth Amendment rights, the City has admitted liability. *See Russo v. City of Bridgeport*, 479 F.3d 196, 212–13 (2nd Cir. 2007) (city's admission that defendants acted in accordance with "custom, policy and practice" indicated that municipal liability would be appropriate if defendants violated plaintiff's constitutional rights). We agree that this admission, though not dispositive, supports Appellants' position.

In further support of their argument that the SAPD had an unconstitutional policy of conducting no-knock entries on less than reasonable suspicion, Appellants rely on the deposition testimony of San Antonio Chief of Police William McManus. McManus is the relevant law enforcement policymaker for the City. The City's charter names him the "director of the police department," and the SAPD Rules and Regulations provide that he has "the exclusive right to establish, rescind, or modify departmental rules and regulations." Additionally, he testified that he was responsible for SAPD policy and agreed that "the buck stops with [him]." At the very least, the Chief's

understanding of common operating procedure is highly relevant to the existence of a custom.

In his deposition, McManus made several statements that might be taken to imply that SAPD officers customarily forego the knock-and-announce procedure when they suspect a small quantity of drugs may be found on the premises. For example, McManus stated, "If it's a small quantity, you're probably not going to find too many police investigators that are going to knock . . . . They're just not going to do it." Similarly, in response to a question about when no-knock entries are acceptable, he answered that the relevant facts are "the amount of drugs involved and whether they're disposable or not." Moreover, McManus described extremely atypical examples when asked for scenarios in which he would advise a knock-and-announce procedure, suggesting a policy of treating no-knock entries as the default procedure in drug cases.

McManus also testified that, based on his review of the internal affairs report of the search of Appellants' home, he did not think it violated department policies. In light of the deposition excerpts in the summary judgment record, a reasonable jury could infer that McManus promotes a policy of making no-knock entries any time a search warrant for a small (or unknown) quantity of drugs is executed.

Appellants also point to the deposition testimony of Albert Ortiz, the former SAPD Chief of Police. Although Ortiz appreciated that a no-knock entry must be understood as an exception to the general knock-and-announce rule, he indicated that the presence of "sinks and kitchens and bathrooms" in Appellants' house was sufficient to give rise to reasonable suspicion.[9] Of course, such a large exception to the "rule" is virtually indistinguishable from a policy of making no-

---

[9] Even assuming that the mere presence of indoor plumbing at a residence is enough to create reasonable suspicion in narcotics cases, an "exception" that would swallow the rule, Arcuri did not articulate a reliance on the presence or location of sinks or toilets in the house to justify his decision to make a no-knock entry.

knock entries in all drug-related cases. Thus, Ortiz's testimony does little to negate the existence of a policy of conducting no-knock entries in an overly broad class of drug cases.

Moreover, the testimony of Arcuri and Marty Laurenz, another SAPD detective involved in the search of Appellants' home, support the conclusion that SAPD officers customarily treat a no-knock entry as the default in drug-related searches. When asked whether the search of Appellants' home "was a high risk simply because you were making a drug bust," Arcuri responded, "Yes, sir." As discussed above, even Arcuri's appellate brief concedes that he conducts a no-knock entry unless he can establish that the "occupants of the premises *did not* pose a threat to the officers' safety upon entry." This approach flips *Richards* on its head by authorizing no-knock entries unless the particular facts of a case confirm that a search will not pose a threat to safety.

Laurenz echoed the department's presumption of danger: "If it's unknown [whether the occupants of a house are dangerous], we do not knock and announce. We enter the location in the most expedient way, which is usually through the front door utilizing a ram." Laurenz specifically stated that the no-knock entry of Appellants' home was made because "we didn't have the knowns on Randy. There was too much unknown about him. We couldn't verify if he was violent or non-violent." These officers' testimony concerning the usual application of SAPD policy evidences a custom of making no-knock entries on less than reasonable suspicion drawn from particular facts and circumstances.

Taken together, the deposition testimony of McManus, Ortiz, Arcuri, and Laurenz, and the City's admission that the search of Appellants' home was conducted in accordance with SAPD policies, are sufficient to create a genuine issue of material fact on the issue of municipal liability. Appellants have therefore made the requisite showing to survive summary judgment on this issue.

No. 11-50010

## IV. CONCLUSION

For the reasons given above, the district court's order granting summary judgment to Arcuri and the City is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.