# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-51062

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2013

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ADAM RODRIGUEZ, A/K/A ADAM ALVAREZ,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-cr-00870

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Adam Rodriguez ("Rodriguez") appeals his conditional guilty plea convictions for possession with intent to distribute cocaine and possession of firearms in furtherance of a drug trafficking crime. As part of his plea agreement, Rodriguez preserved his right to appeal the district court's denial of his motion to suppress evidence seized during an allegedly unlawful entry and search. On appeal, Rodriguez first argues that the officers' failure to knock and announce their presence before entering his

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-51062

girlfriend's home, where he was staying, violated the Fourth Amendment. Second, Rodriguez contends that his consent to search the home was not voluntary. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Detective Khristopher Newman ("Newman") testified that on October 5, 2011, in Lytle, Texas, an undercover officer with the San Antonio Police Department ("SAPD") purchased $100 worth of cocaine from Rodriguez. The transaction occurred outside the residence of Sherri Lowe ("Lowe"), Rodriguez's girlfriend. After negotiating the price, Rodriguez went inside the home to retrieve the cocaine.

As a result of the sale, officers secured an arrest warrant for Rodriguez. Law enforcement officers executed the warrant on October 11, 2011, at Lowe's residence. The arresting officers included approximately ten deputy U.S. Marshals, one SAPD detective, and one Atascosa County Sheriff's deputy.

Deputy U.S. Marshal Austin Phillips ("Phillips") testified that Preston Browning ("Browning"), a supervisor with the Marshal Service, decided that the officers would execute the warrant without knocking and announcing their presence. In reaching that decision, Browning considered "the safety of the personnel" and the possibility of "people flushing the narcotics down the toilet." According to Phillips, there was information from the undercover officer that Rodriguez had a firearm in his waistband when the undercover officer initially purchased cocaine from Rodriguez. Similarly, Deputy U.S. Marshal Hector Arreola, also part of the arresting team, testified that Browning informed officers that "there had been guns present during a previous purchase of narcotics at the residence." Newman also testified that, prior to the October 11 entry, he had reviewed Rodriguez's criminal history and discovered that Rodriguez had previously been charged with possession of narcotics and unlawful possession of a weapon.

2

No. 12-51062

Accordingly, Phillips breached the door of Lowe's home with a battering ram. Deputy Sheriff Jeffrey Adams testified that after entering the home, he and another officer went to Lowe and Rodriguez's bedroom. After a couple of unsuccessful attempts at opening the door, the officers kicked the door open. Inside the bedroom, the officers found Rodriguez, Lowe, and a child. Rodriguez was sitting on the bed, "kind of scooting towards" the officers. In securing Rodriguez, the officers noticed that Rodriguez only had one leg and that he wore a prosthetic leg. Overall, the officers found three men, three women, and three children in the home.

Newman read Rodriguez his *Miranda* rights, and Rodriguez stated that he understood his rights. Newman then told Rodriguez that he could see drug packaging material, small baggies, a firearm, and possibly narcotics. The bedroom also contained, in plain view, a digital scale covered in white dust, which was later confirmed to be methamphetamine. Newman, in asking Rodriguez whether he would consent to a search, explained to Rodriguez that these items gave him "enough probable cause to request a search warrant." Rodriguez responded that everything in the bedroom belonged to him and then signed a consent to search form.

Specifically, Newman asked Rodriguez to read the consent form. Rodriguez did not indicate whether he had any trouble reading it, nor did he have any questions before signing it. Lowe signed the same consent form, without question, after having an opportunity to read it. The signed form stated, "This written permission is being given by me to the above named Officers voluntarily and without threat [or] promises of any kind."

Lowe and Rodriguez testified that the officers said that if they did not sign the consent form, the officers would call Child Protective Services to remove the couple's children from the home and that everybody in the house would go to jail. Conversely, Newman testified that he did not threaten

3

No. 12-51062

Rodriguez in any way, and that he did not threaten Lowe that she would be charged with the drugs or guns. Newman was not directly questioned at the motion hearing whether he threatened Lowe that he would call Child Protective Services.

Ultimately, officers seized from the home a .32 caliber pistol, a 12 gauge shotgun, a .380 caliber pistol, 70.6 grams of cocaine, .7 grams of methamphetamine, and 2.2 grams of marijuana. Rodriguez was charged with distribution of cocaine (count one), possession with intent to distribute cocaine (count two), and possession of firearms in furtherance of a drug trafficking crime (count three). Rodriguez moved to suppress all evidence seized from Lowe's home, arguing that the officers failed to knock and announce their presence in executing the arrest warrant, and that his and Lowe's consent to search was not voluntary. Following a hearing, the district court denied the motion, finding that the no-knock entry was reasonable and that Rodriguez freely and voluntarily gave consent to search. Rodriguez subsequently entered a conditional guilty plea, pleading guilty to counts two and three, and reserved the right to appeal the district court's denial of his motion to suppress. Rodriguez timely appealed.

## II. JURISDICTION

Rodriguez seeks review of a final decision of the district court. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

In examining a denial of a motion to suppress evidence, we review the district court's legal conclusion de novo and its factual findings for clear error. *United States v. Keith*, 375 F.3d 346, 348 (5th Cir. 2004) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). "Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and

firm conviction that a mistake has been committed." *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (internal quotation marks omitted).

The evidence introduced at a suppression hearing is viewed in the light most favorable to the prevailing party. *United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2008) (citation omitted). This Court may affirm the district court's decision regarding a motion to suppress on any basis in the record. *United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008).

## A.  The Officers' No-Knock Entry

The district court did not err in finding that the officers had reasonable suspicion to justify a no-knock entry. The Fourth Amendment requires that officers seeking to execute a warrant must knock and announce their identity and purpose before attempting forcible entry of a dwelling. *See, e.g., Wilson v. Arkansas*, 514 U.S. 927, 934–36 (1995); *Bishop v. Arcuri*, 674 F.3d 456, 461 (5th Cir. 2012) (citing *Wilson*, 514 U.S. at 934). This knock-and-announce requirement is not a rigid rule, but is tempered by "countervailing law enforcement interests." *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997) (quoting *Wilson*, 514 U.S. at 934). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394. The reasonableness of an officer's decision "must be evaluated as of the time [he] entered the [dwelling]." *Id.* at 395. "This showing is not high," *id.* at 394, and "this court has not required officers to demonstrate 'particularized knowledge' . . . to justify a no-knock entry," *Linbrugger v. Abercia*, 363 F.3d 537, 542 (5th Cir. 2004). "Whether specific facts give rise to reasonable suspicion is a question of law that we review de novo." *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citation omitted).

No. 12-51062

The district court found that, based on the undercover officer having previously seen a handgun in Rodriguez's waistband when he purchased cocaine from him, the officers had "a reasonable suspicion that the residents of the home had access to firearms, likely possessed narcotics, and that knocking and announcing would possibly subject them to undue peril." Rodriguez argues that the district court erred because he did not have a criminal history suggesting violence and because his physical handicap (a prosthetic leg) would make it "improbable that heavily-armed federal agents would be afraid of him."

Upon review, the record contains ample facts establishing that the officers had reasonable suspicion to believe that knocking and announcing would be dangerous. First, the undercover officer who initially purchased narcotics from Rodriguez confirmed that Rodriguez would be present in the house on the day of the arrest. Additionally, prior to entry, Browning informed the officers that the undercover officer had reported that Rodriguez was carrying a firearm in his waistband the day of the undercover purchase. Viewing the record in the light most favorable to the Government, "[t]he officers believed that the suspect was selling drugs and was typically armed. This information exceeds the level this circuit has found sufficient to establish a reasonable suspicion of danger." *See United States v. Washington*, 340 F.3d 222, 227 (5th Cir. 2003).

While Rodriguez contends that he had no criminal history suggesting violence, Newman discovered, before executing the arrest warrant, that Rodriguez had previously been arrested for possession of a weapon. *See United States v. Valdez*, 88 F. App'x 785, 786 (5th Cir. 2004) (unpublished) (upholding district court's finding of reasonable suspicion where, *inter alia*, defendant had a prior arrest for possession of a firearm). Moreover, Rodriguez's physical handicap does not lessen the reasonableness of the officers' suspicion of danger. There is no evidence that any of the officers, at the time of entry into Lowe's

home, had knowledge of Rodriguez's physical handicap. On the contrary, at least three officers executing the arrest warrant discovered his physical handicap only *after* entering the home. Even if the officers were aware of his physical handicap *before* entering the home, Rodriguez does not argue that his handicap, a prosthetic leg, lessens his ability to operate a firearm. Viewing the evidence in the light most favorable to the Government, the officers had sufficiently reasonable suspicion that announcing would have been dangerous.

Accordingly, the district court did not err in finding that the officers' no-knock entry did not constitute a Fourth Amendment violation because there were sufficient specific facts giving rise to a reasonable suspicion that announcing would have been dangerous.

## B.  Rodriguez's Consent

The district court also did not clearly err in finding that Rodriguez freely and voluntarily gave consent to search the home.[1]  A warrantless search is "presumptively unreasonable" unless the Government shows that the search fell within an exception to the warrant requirement such as consent or plain view. *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011). Consent must be freely and voluntarily given. *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). "The voluntariness of consent is a question of fact to be determined from a totality of the circumstances" and is reviewed for clear error. *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002) (citation and internal quotation marks omitted). We apply a six-factor test to determine voluntariness:

> 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's

---

[1] Rodriguez's motion to suppress below also argued that Lowe did not give consent to a search. The district court did not address this argument having found that Rodriguez had given consent. Accordingly, only Rodriguez's consent is at issue on appeal.

awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found.

*United States v. Macias*, 658 F.3d 509, 523 (5th Cir. 2011) (citation omitted). "[N]o single factor is determinative." *Id.*

Rodriguez cites *United States v. Galberth*, 846 F.2d 983, 988 (5th Cir. 1988), in arguing that no evidence demonstrates he has sophisticated, or even rudimentary, knowledge about his rights regarding searches. He further argues that his custodial status was not voluntary in light of the large number of heavily armed officers who stormed in, the weapons that were pointed at his children, and the officers' threat to have the minor children placed into state custody.

The district court, in applying the six-factor test, agreed with Rodriguez on at least one point, finding that "the evidence makes clear in this case that the defendant's custodial status was not voluntary." Additionally, the district court found that "[Rodriguez] likely knew that incriminating evidence would be found, yet chose to consent to the search anyway." In light of these facts, factors one and six favor Rodriguez, and we find no reason to disagree.

The remaining factors, however, tend to support the Government's position, and the district court did not clearly err in these factual findings. To begin, many of the district court's factual findings defuse Rodriguez's other arguments. The district court found that Rodriguez was able to read the admonishments and indicated to the officers that he understood them, and that "his testimony at the hearing displayed that he is not lacking in the intelligence necessary to understand the implication of the consent on his Constitutional rights." Rodriguez does not challenge this factual finding, which weighs factor five in the Government's favor. Similarly, Rodriguez does not challenge the district court's factual finding, applicable to factor two, that the testimony as

to whether there were threats to remove the children was incredible and contradicted by Rodriguez's signature on the consent to search form. Nor does Rodriguez challenge the district court's finding that "there was no evidence that any officer threatened any person with a firearm." Rodriguez does not contend that the district court clearly erred in finding these facts; his arguments on appeal simply re-urge his and Lowe's testimony in the hope that this Court re-weighs the factors in his favor. His arguments are unavailing. Indeed, this Court is "particularly deferential" to such findings as they are based on live oral testimony that "the judge had the opportunity to observe the demeanor of the witnesses." *Aguirre*, 664 F.3d at 612 (citation and internal quotation marks omitted).

The district court found additional facts further demonstrating that Rodriguez freely and voluntarily gave consent: he was *Mirandized* and made aware of his right to refuse consent, but nevertheless signed the consent (factor four); he cooperated with the officers throughout the entire process and claimed ownership of anything the officers found (factor three); the police procedures were not especially coercive in light of the circumstances (factor two); and the firearms found in the residence suggest that Rodriguez was comfortable around firearms so as not to be especially intimidated (factor two). Again, Rodriguez does not challenge these factual findings on appeal. Viewed in the light most favorable to the Government, as the prevailing party below, the totality of the circumstances weigh in favor of finding that Rodriguez freely and voluntarily gave consent to a search of the home.

Accordingly, the district court, weighing each of the factors, did not clearly err in ruling that Rodriguez freely and voluntarily gave consent.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Rodriguez's motion to suppress evidence.